SINGER MFG. CO. v. CRAMER.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1901.)

No. 638.

**1. PATENTS—INFRINGEMENT—COMBINATION.**

One who has appropriated the essential and important feature of a patented invention cannot avoid a charge of infringement on the ground that the patent covers a combination, some of the elements of which he has omitted, where he has substituted mechanical equivalents therefor.

**2. SAME—SUIT FOR INFRINGEMENT—DEFENSE OF PRIOR ADJUDICATION.**

Where one defendant was dismissed from a suit for infringement on its own application, based on want of jurisdiction over it as a non-resident corporation, which dismissal was expressly made without prejudice, the presumption is that such corporation intended to place itself in a position where it would not be bound by the judgment, and it cannot invoke such judgment as a bar to a subsequent action against it on the ground that it employed counsel and defrayed the costs of the defense made by its co-defendant, without showing by clear and definite evidence that such fact was known to the plaintiff.

**3. SAME—CONSTRUCTION OF CLAIMS.**

The scope of a patent must be determined by the claims and specification upon which it was granted, and the fact that one feature of the invention claimed was not mentioned in the original application, but attention was first directed to it by an amendment, does not affect the right of the patentee to be protected as fully as though it had been originally claimed.

**4. TRIAL—INSTRUCTIONS—CREDIBILITY OF WITNESSES.**

It is not error to refuse an instruction that if a witness has testified falsely in one particular his testimony as to others may be disregarded, where it omits the essential elements that the testimony must have been willfully false, and must have related to a material matter.

**5. PATENTS—DAMAGES FOR INFRINGEMENT.**

Instructions as to the measure of damages in an action at law for infringement of a patent approved.

**6. SAME—SEWING-MACHINE TREADLE.**

The question of the infringement of the Cramer patent, No. 271,426, for a sewing-machine treadle, claim 1, *held* properly submitted to the jury, under the evidence.

In Error to the Circuit Court of the United States for the Northern District of California.

Chas. K. Offield and Wheaton & Kalloch, for plaintiff in error.
John H. Miller, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. Herman Cramer, the defendant in error, brought an action at law against the Singer Manufacturing Company, the plaintiff in error, for an infringement of the first claim of letters patent No. 271,426, of date January 30, 1883, for a new and improved sewing-machine treadle. The machines which were manufactured by the Singer Manufacturing Company, and which it was alleged infringed upon the Cramer patent, were made under letters patent No. 306,469, issued October 14, 1884, to Phillip Diehl, for "sewing-machine stand and treadle." Claim 1 of the Cramer patent reads as follows:

"The vertical double brace joining the legs of the two ends of a sewing machine, provided with holes through its lower extremities to serve as bearings, in combination with a treadle provided with trunnions fitted to oscillate in said bearings, substantially as specified."

The specification described the treadle as provided with two trunnions cast as a solid portion thereof, and extending from its sides into loopholes in the vertical double brace, the trunnions being sharpened to an edge or corner along their lower sides, and the lower end of the loopholes being hollowed to an angle more obtuse than the edge of the trunnion, to serve as bearings for the same, and to permit the rocking motion common to treadles. The inventor proceeded to say: "I am aware that sewing-machine treadles have before been provided with V-shaped bearings, and I do not claim the same as my invention." The case was tried before a jury, who found for the defendant in error, and assessed his damages at $12,456. Much of the discussion which is found in the voluminous briefs for the plaintiff in error pertains more properly to the merits of the controversy, the construction of the patent, and the weight of the evidence which was introduced before the jury, and would be more directly applicable to the case if this were an equity suit, and were here on appeal. It must be borne in mind that the case comes to us by writ of error to review a judgment rendered upon the verdict of a jury, which can be reviewed only according to the principles of the common law and in the particulars to which error is assigned. Our attention must not be diverted from the questions whether the trial court erred in its rulings upon the evidence, or in giving or refusing instructions to the jury, or in refusing to take the case from the jury upon the ground which was stated in the motion therefor.

One of the assignments of error principally relied on by the plaintiff in error is that the court refused to give a peremptory instruction to the jury at the close of the evidence to find for the defendant. This instruction was asked upon the ground that "no infringement had been shown." Whether or not it was error to refuse the instruction depends upon whether there was any evidence whatever of infringement, which, if credited by the jury, would have

justified their verdict. It is contended on behalf of the plaintiff in error that the claim of the patent which is sued upon calls for a combination of elements, all of which were old, and that the court could plainly see from an inspection of the Diehl patent that it omitted substantial features of the patent upon which the action was brought. We find in the record evidence which went to the jury tending to show that the essential and important feature of claim 1 of the Cramer patent was the location of the treadle supports in the vertical cross brace which connected the legs or side pieces of the machine, and that such location in the cross brace was new with the Cramer invention. There was also evidence tending to show that by so locating the treadle a ,better alignment of the treadle could be kept and maintained, and that the tendency of the machine in operation to loosen the joints which hold its legs in position, thereby displacing the treadle, was overcome. The evidence was that theretofore the treadle had been mounted in the legs or side pieces of the machine, or on a cross rod connecting the legs, but never before had been inserted in the vertical cross brace. In addition to other evidence of the utility of the plaintiff's invention and of its novelty was the evidence afforded by the admissions and declarations of the plaintiff in error. It was shown that shortly after obtaining his patent, on February 8, 1883, Cramer submitted to that corporation the claims of his invention, and endeavored to sell it his patent. In the following year Diehl, who was an employé of the Singer Company, obtained his patent upon his device, which also places the bearings of the treadle in the vertical cross brace. The advantage of this construction of treadles under the Diehl patent was promptly published to the world by the Singer Company. Its catalogue of 1885 exhibits cuts of machines with the treadles hung in the vertical cross brace and thus refers to them: "The balance wheel and treadle have their bearings entirely independent of the stand (or legs), thereby assuring a correct adjustment and easy action." This device prevents the "binding" which so often follows a slight displacement of the supports of the machine,—a difficulty rarely appreciated, except by a skilled mechanic, which hitherto has been considered impossible to remedy. In another circular is shown a cut of a machine containing the treadle mounted in a vertical brace, accompanied with these words: "It also shows the new [patented] and light-running stand, upon which all our family machines are mounted, with band wheel and treadle entirely supported within the brace, insuring accurate adjustment and ease of operation." In its catalogue of 1889 the company said: "These bearings being entirely within the brace, the adjustment is not affected by any strain which may be put upon the stand."

But it is contended that, inasmuch as the claim of the Cramer patent is for a combination of elements, all of which were old, the patent is not entitled to the doctrine of equivalents, but must be confined to the form which is presented in the claim and specifications. It is urged that the Diehl patent presents material variations from those forms,—so material as to avoid the charge of infringement. It

is said that the Diehl patent uses point-center bearings instead of knife-edged bearings with trunnions, which are essential features of the Cramer patent. The trunnions in the Cramer patent are projections upon the sides of the treadle in its axis, and their purpose is to afford the knife-edged bearings upon which the treadle turns. In the Diehl patent there are no such projections, and the treadle at the point of axis turns upon point-center bearings,—that is to say, upon pointed screws which are inserted through holes in the vertical cross braces, and are set in holes countersunk in the treadle. There was evidence before the jury that these screws in the Diehl patent, upon which the treadle turned, were the mechanical equivalents of the knife-edged bearings and trunnions of the Cramer patent, and that by inserting the screws through the cross brace in the Diehl device the same result was secured by a reverse method that was secured in the Cramer device. If the evidence was true that Cramer was the first to present a new and useful combination by mounting his treadle in the vertical cross brace, thereby obtaining the advantages which some of the witnesses testified to, he was undoubtedly entitled to the protection of that combination, and to the exclusive right to mount a treadle in the cross brace, no matter what the form of the bearings of the treadle might be. This view is fully sustained by the general doctrine of the decisions. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Ives v. Hamilton, 92 U. S. 426, 23 L. Ed. 494; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Hoyt v. Horne, 145 U. S. 308, 12 Sup. Ct. 922, 36 L. R. A. 713.

It is earnestly contended that, inasmuch as the claim of the Cramer patent calls for a "treadle provided with trunnions," the trunnions are made an essential feature of the construction of the treadle, and that there can be no infringement by the use of a treadle which has no trunnions. We do not think, however, that the court should have taken the case from the jury upon that ground. In order to mount the Cramer treadle in the vertical cross brace upon knife-edged bearings, it was absolutely necessary that it be provided with trunnions or the equivalent thereof. The trunnions in this case are the knife edges of the bearings, no more and no less. There could be no such bearings without the projections, by whatever name they may be called. If the patentee was entitled to the doctrine of mechanical equivalents, and to the protection of the right to mount his treadle in the vertical cross brace with bearings, whether knife-edged or point-center, his right certainly is not affected or diminished by the use of the words "provided with trunnions," as found in his claim, provided that the jury found, as they may have done from the evidence, that the one element of his combination, which consisted in mounting the treadle in the cross brace, was new, and that the bearings used in the Diehl patent were the mechanical equivalent of his bearings.

It is contended that the court erred in excluding certain evidence which was offered concerning the alleged complicity of the Singer Company with a prior action prosecuted by the defendant in error against an agent of the company. That action had been brought in

the circuit court for the Northern district of California by the defendant in error against the company, and Willis B. Fry, its agent. The Singer Company made a special appearance for the purpose of challenging the jurisdiction on the ground that it was a corporation of another state, and could not, without its consent, be sued within the jurisdiction of the Northern district of California. Upon that ground it obtained an order dismissing it from the action, without prejudice to the right of Cramer to bring a future action against it for the same cause. The action was thereafter prosecuted against Fry alone, and a judgment was rendered in his favor on the ground of noninfringement. When the present case was subsequently begun against the Singer Company, it pleaded the judgment which was rendered for the defendant in the action against Fry as "res judicata," contending that it could avail itself of that judgment for the reason that it had employed counsel to defend the action against Fry, and had defrayed the expenses of his defense. That plea was sustained in the circuit court, but upon writ of error from this court the judgment was reversed, upon the ground that the evidence failed to show that the connection of the Singer Company with the defense of the action against Fry was open and known to the opposite party. Cramer v. Manufacturing Co., 35 C. C. A. 508, 93 Fed. 636. The case was thereupon remanded for a new trial. Upon the new trial, which resulted in the judgment which is now sought to be reviewed, the plaintiff in error introduced certain testimony which, according to its contention, tended to show knowledge upon the part of the defendant in error or his counsel of the fact that the plaintiff in error had defrayed the expenses of the litigation upon the part of the defendant Fry. One of the attorneys for Fry testified that, pending the litigation of that cause, one of the attorneys for Cramer remarked to him that he did not expect to make anything out of Fry, for the reason that the latter was the Singer Manufacturing Company's agent, but that he expected to recover a judgment in that action before the jury, and that he would make that judgment the basis of proceedings for the purpose of getting an injunction against the Singer Company, and that he also remarked that counsel for Fry ought to be well paid by the Singer Company for the services which they were rendering in that action in defending it, and that Cramer was present, and also remarked that they ought to be well paid by the Singer Company for their services. Upon motion of the defendant in error, all of this testimony was struck out except that concerning the remark made by Cramer himself. Evidence was also offered from the record of testimony in the case of Cramer against Fry, in which it appeared that counsel for Cramer had offered in evidence a page from one of the pamphlets of the Singer Company describing the advantages of the machine which the company was selling, and alleged that it set forth advantages that "the company" was claiming for that particular form of treadle. The plaintiff in error also offered in evidence the letter from the defendant in error to the Singer Manufacturing Company of date February 8, 1883, directing the company's attention to the advantages of his patent. This was

offered upon the theory that because it was introduced in evidence in the case of Cramer against Fry it must be inferred that Cramer's counsel knew that that case was being defended by the Singer Manufacturing Company. We find no error in the exclusion of any of this testimony. None of it tended in the remotest degree to prove knowledge on the part of counsel for the defendant in error of the fact that the Singer Company was in any way connected with the defense of the case against Fry. There was no offer to prove that any fact was ever communicated to the defendant in error or his counsel, or that anything came to their notice, from which such knowledge might be imputed. If, indeed, counsel for the defendant in error supposed that the plaintiff in error intended to pay for the services of Fry's attorneys, it was, so far as the record informs us, the merest conjecture on their part. The suggestion that the company ought to pay for those services is wholly consistent with an entire absence of knowledge upon that subject. To the suggestion so made, so far as the evidence shows, there was no response; no information was offered. The fact that counsel for Cramer intended to use their judgment, in case they obtained one, as the basis of an injunction against the company, indicates, if anything, that they believed the company would not be liable as a judgment debtor upon such judgment. The open dismissal of the Singer Company from that suit upon its own motion was significant of its withdrawal from the litigation, and of its purpose not to be bound by the judgment to be rendered therein. Why should that company have taken the pains to assert its right to be dismissed as a party defendant to that action, if it did not intend thereby to place itself in a position where it could not be affected by the judgment? Its dismissal from the action was wholly inconsistent with an intention to be identified with Fry as a defendant or to be bound by the judgment. The judgment entry dismissing it expressly reserved the right of the plaintiff in that action to again sue the corporation upon the same cause of action. Both the dismissal and the reservation of that right were empty and idle acts, if the corporation intended to maintain such connection with the action as to be concluded by a judgment therein. As against the overt declaration of its attitude to that litigation, the evidence of its continued connection with the defense must needs be definite and certain, and must not rest in suspicion or conjecture. The evidence which was offered and which was excluded by the court did not tend to sustain the conclusion that Cramer or his counsel had knowledge that the Singer Company was, after its withdrawal from the action, identified with the defense.

The point is made that in his original application for a patent, filed in May, 1882, the defendant in error designated his invention a mechanism to form a "noiseless, self-adjusting treadle," and that he made no allusion to the feature thereof which is now deemed of prime importance, until his specification was subsequently so amended by his attorneys as to contain the declaration that his invention had for one of its objects to provide means "to keep the treadle bearings rigidly in line and at a fixed distance apart, to avoid friction."

It is argued from this circumstance that the court must construe the invention of the defendant in error to be a mechanism to secure a noiseless, self-adjusting treadle, and nothing more. We find in the record no assignment of error to which this contention of the plaintiff in error relates, but, conceding that it is pertinent to the questions which are before us, we are unable to assent to the doctrine that an inventor is thus circumscribed by the words which he may first use to describe the advantages of his invention, and that he may not afterwards, on further consideration, either upon his own suggestion or that of his counsel, amend his specification so as to assert and maintain all the advantages which his device possesses. The file wrapper, it is true, may be resorted to to determine what changes have been made in the description and claims while the application was pending, or to define the nature of the invention, or to ascertain what limitations and provisos have been imposed thereon by the inventor, but the changes which are relied upon by the plaintiff in error in this instance were not changes or limitations as to either description or claim. The claim throughout is substantially the same. It is the location of the treadle in the vertical cross brace, with the accompanying mechanism for its oscillation. That claim has not been departed from or limited. The final amendment simply directed attention to advantages which it possessed in addition to those first mentioned, only for the purpose of offering additional proof of invention. The patent when it was issued contained the claims and specifications by which it must be construed, and by which the rights of the patentee must be measured.

Error is assigned to the refusal of the court to charge the jury that a witness false in one particular of his testimony is to be distrusted in others. It is contended that that instruction was properly applicable to certain testimony of the defendant in error. It was shown that upon the trial of the former action of Cramer against Fry, in 1895, the defendant in error did not carry his invention back of the year 1882, whereas in the present case he places the date thereof as early as 1880, and it was argued that the testimony in the present case must therefore be false. It was said, also, that the testimony of the witnesses of the plaintiff in error concerning the date at which machines containing the Diehl patent were offered for sale conclusively impeached the testimony of the defendant in error upon the same subject. The rule is that the jury may reject the whole of the testimony of a witness who has willfully sworn falsely as to a material point. In People v. Strong, 30 Cal. 155, it was said that the rule did not apply to mistakes which were the result of error, inaccuracy, or embarrassment, without any real intention to misrepresent or deceive. The vice of the charge as requested is that it left out the two essential elements, that the false testimony must have been willfully false, and must have referred to material matter. There was no error, therefore, in denying it. People v. Sprague, 53 Cal. 494; People v. Soto, 59 Cal. 369; People v. Plyler, 121 Cal. 163, 53 Pac. 553.

Several of the assignments of error are directed to the instructions given by the court to the jury upon the subject of damages.

There was testimony to the effect that the defendant in error in the years 1881, 1882, 1883, and 1884 sold sewing machines containing claim 1 of his invention, and that the cost of putting the same into each machine was $1.50, and that his net profit on each machine sold containing claim 1 was $3.50, and that when the plaintiff in error put upon the market a machine which contained the infringing device, and sold the same at a lower price than that at which the defendant in error had sold, the business of the latter was injured, and he was compelled to withdraw from the field. The court instructed the jury as follows:

"The evidence as to the amount of damages claimed by plaintiff is not very satisfactory, but it may be that the actual sales made by the defendant, in this district, of sewing machines containing the alleged infringing device, for the period named, could not have been ascertained without great labor and delay, and, as a practical way of presenting this evidence, the plaintiff has done all that could be reasonably expected under the circumstances."

That which defendant did to show the extent of the infringement was to call upon the plaintiff in error to disclose the number of machines it had sold within the district under the Diehl patent. For this purpose the agent of the Singer Company was called as a witness. It was then agreed between the parties that, in view of the difficulty of ascertaining the exact number of such machines sold, the agent might estimate the same. He estimated the number at 12,456. The jury, in assessing the damages, apparently allowed $1 for each machine sold. We do not see that the instruction above quoted, or any of the instructions given by the court concerning the question of damages, was erroneous, or that the court erred in refusing to give instructions asked for by the plaintiff in error. The defendant in error had a monopoly of his own invention. He had not sold the right to any other to manufacture or to vend the same. He had fixed a price of $5 extra for each machine containing his treadle, or a net royalty of $3.50. He testified that he was able and ready to supply the demand for his improvement, and that his market was destroyed by the action of the plaintiff in error.

Concerning the damages sustained by a patentee from infringement, Walker, in his work on Patents (section 563), says:

"If he maintains a close monopoly, and is ready and able to furnish the whole market with the patented articles, he must prove by satisfactory evidence the advantages gained by the infringer in the unlawful use of the patent, over and above the advantages which he could have derived from the use of similar articles unpatented and open to the use of the public, or must prove the loss or falling off of his own sales in consequence of the infringement, or a loss by the compulsory reduction of prices made necessary by the competition of the infringer. The rule varies with the special circumstances of the particular case [citing Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024; Philp v. Nock, 17 Wall. 460, 21 L. Ed. 679; and Birdsall v. Coolidge, 93 U. S. 64, 23 L. Ed. 802]."

The plaintiff in error contends, further, that there is no evidence to sustain a verdict for more than nominal damages, and that the record shows affirmatively that the defendant in error sustained no injury by reason of the acts of the plaintiff in error; that by his

own statement the defendant in error ceased selling machines containing his brace and treadle in the year 1884; and that the testimony shows conclusively that the plaintiff in error placed no machines upon the market containing the Diehl patent before the year 1886. We find in the evidence that the defendant in error in his testimony fixed no precise time at which he ceased selling his invention. He testified that he sold it from 1881 up to about 1884, "or somewhere along there;" "until they came up with theirs." Elsewhere he testifies, to the same purport, that he did not retire from the field until the machines containing the Diehl patent were placed upon the market. In view of all the evidence in the record, we find no warrant for saying that no testimony whatever went to the jury to sustain the conclusion that the defendant in error ceased manufacturing and selling his brace and treadle on account of the competition induced through the manufacture and sale of machines containing the Diehl treadle.

There are numerous additional assignments of error, which we have carefully considered, but do not deem it necessary to discuss, further than to say that in none of them do we find error for which the judgment should be reversed. The judgment will therefore be affirmed.