KIRCHBERGER et al. v. AMERICAN ACETYLENE BURNER CO. et al.

(Circuit Court of Appeals, Second Circuit. March 22, 1904.)

No. 174.

1. PATENTS—ANTICIPATION—SUFFICIENCY OF PROOF.

In the specification of a patent in suit, for a gas burner, the patentee stated that it was preferably made of lava, but such material was not made an element of the claims. It was shown that when so made the burner was practically efficient, and overcame the objections to prior burners. It was also shown that the burner of an alleged anticipatory patent, somewhat similar in construction, but made of brass, was not so efficient, nor practically operative; and complainants admitted that their burner would not be, if made of brass. *Held,* that in order to establish anticipation, by showing that the difference was in the material used, and not in the manner of construction, which was the thing patented, defendant had the burden of proving that the alleged anticipatory device, if made of lava, would be practically operative and efficient—a different principle of operation being claimed by each of the patentees.

2. SAME—VALIDITY OF CLAIMS—AMENDMENT OF SPECIFICATION.

An inventor may so amend his specification as to include therein all the advantages within the scope of his invention, where his amendment is filed before other inventors have entered the field, whose rights might be prejudiced, and the original drawings and specification sufficiently show and suggest the claims finally made.

3. SAME.

Where the original specification for a patent sufficiently disclosed the nature of the invention claimed, and sufficiently suggested the process involved therein, it is permissible to amend so as to include claims covering the process, as well as the mechanical structure.

**4. SAME—INFRINGEMENT—TIP FOR ACETYLENE GAS BURNERS.**

> The Dolan patent, No. 589,342, for a process of burning acetylene gas, which consists in surrounding the jet of gas with an envelope of air in a chamber above the discharge orifice of the burner, for the purpose of preventing its combustion in immediate contact with the burner, and until it passes out of the chamber, as distinguished from the air-mixing process of the prior art, and also for a burner tip adapted to carry out such process, was not anticipated, and is valid. Claims 1, 2, and 3 also *held* infringed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 124 Fed. 764.

This case comes here on appeal from a decree of the United States Circuit Court for the Northern District of New York adjudicating validity, and infringement by defendants, of complainants' patent, No. 589,342, granted August 31, 1897, to E. J. Dolan, for a tip for acetylene gas burners.

F. F. Church, for appellants.

Louis C. Raegener, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. It appears from the record that the acetylene light industry owes its origin to the discovery by Thomas L. Wilson that calcium carbide, which prior to his discovery had been unknown, so far as concerned any commercial purposes, could be electrically produced in large quantities, and that acetylene gas could be practically, successfully, and economically generated therefrom. This discovery was considered so important that several million dollars were expended in the purchase and sale of rights under the Wilson patents. Owing to the peculiar richness of this gas in carbon, it was soon found that it could not be practically used for any great length of time in any of the burners of the prior art, or in those originally devised especially for burning acetylene gas. Complainants unsuccessfully tried all the kinds of burners which they could get in the market, and those furnished by various manufacturers. Two difficulties were encountered: First, an insufficient consumption of the carbon, so that the gas smoked, and floating particles of carbon were distributed through the atmosphere; and, second, a clogging of the orifices of the burners, after a few hours of use, by carbon deposited during the process of combustion. At this crisis the attention of the complainants was called to the burner of the patent in suit, which obviated the objections previously encountered, and was capable of successful practical operation for more than 1,000 hours. The difficulties attendant upon the use of prior devices, and the theory of his invention, are stated by the patentee in his specification as follows:

"It is well known that great difficulties have been experienced in the making of a suitable burner for acetylene gas. The difficulties have largely been due to the fact that, after a certain time of burning, a deposit has been formed at the point of exit of the gas from the burner, which has gradually choked the outlet and distorted the flame. This difficulty is not cured by merely mingling air with the gas before it is burned. The difficulty seems to be due to the fact that acetylene decomposes at about a red heat, forming benzol, carbon, hydrogen, and other compounds. If at this point of decomposition a re-

ceptive surface is present, the carbon is likely to deposit upon such surface, producing the difficulty above described. It is obvious that, if a substantial separation can be made between the burner-surface and the acetylene as it issues from the burner, this deposit is less likely to occur. This deposit has also been found, in practice, to be less when acetylene mingled with air is burned than when pure acetylene is burned."

The patented burner comprises a tip, preferably made of lava or other material of a like character, provided with a contracted passage or opening connecting the larger supply gas passage and the larger passage terminating at the extreme end of the burner tip. The construction of the tip is shown by the following copy of Fig. 1 of the drawings of the patent:

*Fig. 1*

The patentee says:

"In order to prevent the deposit of carbon within the burner or at the burner-top, and thereby insure a perfect combustion and a smokeless flame at the point where the same is formed, I provide a series of inclined air-passages, a, a, which lead into the enlarged passage, E, above the point at which the contracted opening, C, is provided. Ordinarily a single row or series of these air-passages will be found to be sufficient, as is shown in Figs. 1 and 3 of the drawings, though, if for any reason it should be preferred, two or more may be provided, as shown in Figs. 2 and 4 of the drawings."

He further states that he finds it advisable to use this burner in duplex form, or in pairs inclined toward each other, so that the flames from the two tips, uniting at a point above the plane of the tips, form a single flat flame, having great illuminating power. The patentee further explains the operation of his device, as he understands it, as follows:

"The operation of this device seems to be that the gas under pressure escaping in a cylindrical jet through the opening, C, draws in on all sides an envelope of air through the openings, a. This is due to the fact that the chamber, E, is larger than the outlet, C, and to the fact that the air-inlets, a, substantially surround the issuing gas-jet. The result of this arrangement seems to be to so cool the outside of the flame as to prevent any deposit of carbon at the point of egress. It is, of course, essential that the gas have sufficient pressure —say from three to four inches of water—to draw in the necessary amount of air. The result here accomplished would not be accomplished by an ordinary air-mixing burner in which the air was mingled generally with the body of the gas—as, for instance, a burner of the type patented to Thomas Holliday on April 20, 1897, No. 581,117. In that type of burner there is an intermediate chamber provided for the special purpose of mingling the air and gas before they escape from the burner. In my burner an absolutely unobstructed passage is provided for the escape of the original jet of gas formed by the con-

stricted opening, C. By reason of this fact it is substantially necessary to have two jets, if a flame of considerable candle-power is desired."

The claims in suit are as follows:

"(1) The process of burning acetylene gas, which consists in projecting a small cylinder of gas, in surrounding the same with an envelope of air insufficient to cause combustion of all the gas, and in finally supplying the gas with an additional amount of oxygen by allowing the stream of gas to expand above the burner-tip into contact with the air, thereby burning the same, substantially as described.

"(2) The process of burning acetylene gas, which consists in projecting toward each other two cylinders of acetylene gas, in surrounding the same with envelopes of air insufficient to produce combustion of all the gas, and in finally causing the cylinders of gas to impinge upon each other and produce a flat flame, substantially as described.

"(3) The combination in an acetylene-burner of the block, A, having the minute opening, C, the cylindrical opening, E, opening without obstruction to the atmosphere, and the air-passages, a, substantially as described.

"(4) The combination in an acetylene-burner of two air-mixing burners mounted upon a suitable support and inclined toward each other, the said burners being each provided with an air-ejecting apparatus within the burner itself, substantially as described."

The preliminary question of title in complainants was raised by their failure to produce the assignment to them of the sole and exclusive right to the patent, as pleaded in the bill. In view of the finding of the court below that complainants' title as alleged was admitted in the court below, and the statement of counsel that the assignment as pleaded was ready to be produced in court, showing such exclusive license in complainants, we conclude that title has been sufficiently proved.

The theory of prior constructors of gas burners adapted to the use of gas rich in carbon, for illuminating purposes, was to secure a complete mixture of the gas and air in suitable proportions within the burner. For this purpose they used various modifications of the well-known Bunsen burner. In the Bunsen burner, a long tube, having openings at the bottom for the admission of air, is placed over the tip from which gas issues, and the jet of gas passing up the tube creates a draft which draws in the air at the openings. The tube thus constitutes a mixing chamber, from the top of which issues the mixture of air and gas. In this manner all the carbon particles are consumed, and a nonluminous flame is produced for heating purposes. Later a modification of the Bunsen burner, sometimes called the "Semi-Bunsen," was made, having openings in the sides of the burners for the admission of a small quantity of air—just sufficient to prevent smoking, but not sufficient to interfere with the production of a luminous flame. This semi-Bunsen burner was adapted for use with very rich forms of gas, which were liable to smoke in ordinary burners. When tried with acetylene, it obviated said first objection of smoking, but after a short time it became clogged with deposits of carbon and was useless. In his patent, No. 555,198, for the process of making said gas, Wilson proposed preferably to mix the gas and air in a holder, but suggests that "it is also possible to supply or add the oxygen or air required at the burner." This reference is to the semi-Bunsen burner, or aero-burner of the Bunsen type, adapted for use for illu-

minating purposes, then well known in the art, early examples of which are shown in Jones & Collins patent, No. 56,949, and Averill patent, No. 141,415, where the intermingling of gas and air is effected in the burner.

The defendants manufacture their burners in accordance with a portion of the provisions of patents No. 617,942, dated January 17, 1899, and No. 634,838, dated October 10, 1899, issued to Henry E. Shaffer, and their contention is that said burners are merely improved forms of the constructions known to the prior art. Their substantial defense in this connection is well stated by the defendants' expert as follows:

"My view is that the processes for burning acetylene mentioned in the first and second claims of the patent in suit lack substantial novelty, in view of the prior art, and that they are not infringed, because in defendants' burners the operation is more to mix the air with the gas jet as it passes through the discharge passage of the burner, than to merely envelop the gas jet by air, without causing a mixture, which seems to be the point on which the operations of the first and second claims stand."

In support of these contentions various patents were introduced by defendants, which specifically describe constructions whereby the air is mixed with gas in the body of the burner. It is unnecessary to discuss these constructions, because it is admitted that the prior French patent to Bullier, No. 246,768, and Figs. 7 and 9 of said patent, show the nearest approximation to the burner of the patent in suit. Copies of these drawings are given below·

The Bullier patent is for a burner for acetylene and other rich gases. The gas inlet orifice in Fig. 9 is opposite the lower air orifice, b. In Fig. 7 the air enters at the orifice d. The patentee states that:

"The small air openings, b, may be of any number—three or four in a row, for example. A sliding ring, c, is frictionally mounted on each branch of the burner, so that one or more rows of the openings, b, can be opened, and consequently the admission of air regulated."

The patentee further says:

"It will be understood that the burner can be composed of any number of branches. Instead of allowing the air to come in laterally, I reserve the right to cause it to come in at the middle of the burner, and the gas from the side; that is to say, to apply a reversal of the arrangement described in the patent."

The whole patent depends upon the theory of a mixture of air and gas. The patentee explains that the nozzle, a, in Fig. 7, contains a very small orifice, b, through which gas escapes into the tip, c, provided with the air orifice, d. The patentee says that the arrangement

shown in the drawing is similar in principle to that of a Bunsen burner; that the mixture is formed in the tip, c; that the air conduits are so arranged that "the current of gas entrains a certain quantity of air, which, mixing with the gas, causes the complete combustion of the gas."

This burner is in many respects strikingly like that of the patent in suit. There are, however, these radical differences in construction: The air-passages in the Bullier burner are located at such a distance below the head as to afford an opportunity for, if not to necessarily cause, a thorough mixing of air and gas, while in the patent in suit the small chamber and orifice are so located at the uppermost end of the burner as to apparently prevent such mixing. The statement of Bullier that he reserves the right to reverse the arrangement shown in Fig. 10, which is practically the same as Fig. 9, further shows that his chief idea was to secure a thorough mixture, whether the gas came in first, and the air later, or vice versa. In his later United States patent, which is subsequent to the patent in suit, Bullier omits the suggestion of the reversal of parts, and he claims "means for commingling the air and gas within the burner M," confines himself to the construction covered by Figs. 9 and 10 of his earlier patent, and illustrates it by drawings of the same long tips, like those of the Bunsen burner, with gas orifices near their bottom, and with air orifices not located in the extreme head of the burner.

It must be conceded, upon all the evidence, that Bullier nowhere shows, describes, or claims any construction designed to surround the jet of gas with an evelope of air, and this is admitted by defendants. They claim, however, that the theory of envelopment stated by Dolan is immaterial upon the question of infringement, provided prior devices, irrespective of the theories of their inventors, were capable of accomplishing the result achieved by him. Relying upon this contention, they produced various brass burners of the prior art, and stated that they had been subjected to a test, and that all of them successfully burned acetylene gas for a brief period of time. These burners included, inter alia, one of the Bullier patent, as shown in Fig. 7. The complainants' expert thereupon took these burners, tested them during a perior of 23 hours, and took photographs of them at different periods during said burning operation. The Bullier burner burned for 18 hours, and then became clogged. The other burners tested, with one exception, gave out at an earlier period.

Defendants claim that, if said burners of the prior art had been made of lava or steatite, they would have burned uninterruptedly, without clogging, and that the burner of the Dolan patent was practically inoperative when made of brass. Thereupon the following stipulation was entered into:

"For the purposes of this case, it is hereby stipulated and agreed that burners made wholly of brass, but otherwise in exact accordance with the directions of the Dolan patent, No. 589,342, in suit, would clog up and be inoperative at the end of fifty (50) hours for the burning of acetylene gas."

This condition of affairs raises a close question. There was no evidence in the record that the Bullier patent had ever been commercially used. The tests, considered alone, left the question open whether it

was a mere paper patent, or was capable of successful practical operation. Complainants, by their stipulation, admit that the burner of the patent in suit, if made of brass, would have become clogged within a period of time shorter than that in which one of the prior devices burned successfully. We conclude, however, that, inasmuch as defendants' contention is based on the claim that the Bullier or other devices of the prior art were capable of practical successful operation when made of lava or steatite, the burden was upon the defendants to prove this fact as part of their prima facie case. Especially is this so in view of the difference in construction stated above, where Bullier claims to locate his air-passages so as to insure a mixture, while Dolan claims so to locate his passages at the extreme end of the tip as to prevent a mixture. The further question was whether Dolan, in fact, discovered a new and radically different process for enveloping the gas, as distinguished from the Bullier and other mixers of the Bunsen type. Defendants, therefore, should have shown that the differences of construction between Dolan and Bullier were negligible, by showing, in chief, that the Bullier burner would stand a practical endurance test. Instead, they furnished a brass reproduction of Fig. 7 of the Bullier burner, which, under complainants' tests, burned for 18 hours only. There is therefore no proof in the case that that Bullier burner was practical. Defendants did not offer any exhibit of a burner constructed according to Fig. 9 of Bullier. Complainants' expert, however, caused one to be made of brass, like the other exhibits furnished by defendants, and this became clogged and useless in less than 17 hours.

We conclude, therefore, that said Bullier patent does not anticipate the patent in suit because: (1) The defendants have failed to show that it is capable of successful practical operation, or that the objections thereto were such as could be obviated without the exercise of the faculty of invention. Sage v. Wyncoop, 104 U. S. 419, 26 L. Ed. 740. (2) Because, being a foreign publication, it does not contain a substantial representation of the patent improvement in such clear and exact terms as to enable a person skilled in the art to construct and practice the invention. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073, 30 L. Ed. 1064; Chase v. Fillebrown (C. C.) 58 Fed. 374, 378. (3) It appears that it does not operate upon the theory or in the manner covered by the invention in suit.

The proof of infringement is so clear that it does not require extended discussion. We may assume that defendants infringe Dolan's process, provided they employ the instrumentalities covered by his patent. The patent under which defendants claim specifically provided as follows:

"Near the outer end of the passage, 9, are provided very small lateral passages, 12, serving to admit air to the column of mixed air and gas near the point of combustion, effectually surrounding it and preventing contact with the extreme end of the tip, thereby preventing undue heating of the latter, and the formation of a deposit thereon."

These passages are the structural equivalents of those shown in the patent in suit. The sole defenses interposed are that these passages

are so arranged as to produce a mixture; that defendants, in their burners, use one only of said passages; and that one passage would not admit air so as to envelop the gas. The former contention has been already discussed. The latter is patently untenable, and is disproved by the admission of defendants' expert. Referring to the defendants' burners, defendants' expert says as follows:

"The air opening in question is formed in the upper part of the burner; that is, that part which lies between the flat end of the burner and the discharge passage on which the flame is seated, so that the air entering through this upper opening descends from the end of the burner to this discharge opening, and then, I should judge, curls around the upper portion of the circular edge and goes out with the mixed current of air and gas. To ,that extent, I should judge that this air current would tend to prevent the flame from making direct contact with that part of the circular edge which is located over the inner end of that upper air passage."

The fact that the air passages in the two burners are differently inclined is immaterial, in this connection, and need not be discussed.

A further contention by defendants is that the patent is invalid by reason of an amendment in the Patent Office. The original specification was filed February 18, 1897. An amended specification was filed May 20, 1897. The difference between the original and amended specifications, relied on by defendants, is shown as follows:

| "Original Specification. | "Amended Specification. |
|---|---|
| "In order to supply to gas within the tip, before it reaches the point at which combustion takes place, a sufficient amount of oxygen to insure perfect combustion and to render the flame smokeless, I provide a series of inclined air passages, a, a, which lead into the enlarged passage, E, above the point at which the contracted opening, C, is provided." | "In order to prevent the deposit of carbon within the burner, or at the burner top, and thereby insure a perfect combustion and a smokeless flame at the point where the same is formed, I provide a series of inclined air passages, a, a, which lead into the enlarged passage, E, above the point at which the contracted opening, C, is provided." |

In both specifications it was stated that the result sought to be accomplished by the invention was perfect combustion of the gas. In the original specification, Dolan says, "in order to supply to the gas within the tip * * * a sufficient amount of oxygen to insure perfect combustion, * * * I provide," etc.; and he claims the tips or burners, only, and not the process. In the amended specifications he omits the statement as to the amount of oxygen, but in the first claim for the process he explains that the process consists in surrounding the cylinder of gas with an envelope of air insufficient to cause combustion of all the gas, and in finally supplying an additional amount of oxygen sufficient to insure combustion by allowing the gas to expand above the tip into contact with the air. It is contended, therefore, that the original specification failed to describe the process covered by the patent in suit, and that claims 1 and 2 of the patent are invalid. This contention is unsound, for the following reasons: (1) The amendment was filed within three months after the filing of the original specifications, and before, so far as appears, other inventors whose rights had been prejudiced had entered the field. Railroad v. Sayles, 97 U. S. 554. 24 L. Ed. 1053. (2) The original drawings and specifications sufficiently show and suggest the claims finally made, or at least are not

inconsistent therewith.    Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.    (3) Subject to the foregoing rules, an inventor may amend his specification so as to include therein all the advantages within the scope of his invention.    Singer Mfg. Co. v. Cramer, 109 Fed. 652, 658, 48 C. C. A. 588.

It was unnecessary, in the original application, where only the tip was sought to be patented, to set forth the steps in the process by which the desired result was accomplished.    But when the applicant sought to cover both process and product, he explains that the process by which he secures perfect combustion consists in first surrounding the gas with an envelope of air insufficient to cause complete combustion, and in subsequently supplying such additional air as is sufficient for that purpose.    The original specification and drawings disclose the envelope construction of air-passages surrounding the jet of gas. In these circumstances, we conclude that there is no substantial conflict between the statements in the original and amended specifications; that the original specification sufficiently disclosed the nature of the invention claimed in the patent, and sufficiently suggested the process involved therein; and that, as the invention or discovery of the process involved the invention of the product, and the product was the result of the process, the claims for the process were properly included in the patent in suit.    Powder Company v. Powder Works, 98 U. S. 126, 25 L. Ed. 77; Wing v. Anthony, 106 U. S. 142, 1 Sup. Ct. 93, 27 L. Ed. 110.

If the defendants are correct in their contention that the Bullier burner is practical, successful, and operative when made of lava or steatite, they are at liberty to use the same, or they are at liberty, having closed the aperture at the extreme end of the tip, which admittedly furnishes the air envelope for the gas, to use the apertures whereby the mixing of air with gas is secured.

It is unnecessary to discuss the first, second, or third claims, all of which are valid and are infringed.    Nor is it necessary to discuss or construe the fourth claim.    The invention of the patent resides, as we have seen, in devices which surround the acetylene gas with an envelope of air, in contradistinction to the old air-mixing process.    If it be held that the two burners of claim 4 are but a duplication of the single burner of claim 3, complainant is abundantly protected against infringement by claim 3.    If, on the other hand, it be held that, because of the use of the words "air-mixing burners," the claim should be restricted to burners which "mix," instead of "enveloping," defendants do not infringe.    What construction should be given to the claim, we think it unnecessary to decide.

The decree is affirmed, with costs.