## YOUNG v. STRUBLE.

PATENTS; AMENDMENTS; AFFIDAVITS; INTERFERENCE.

1. The rule that amendments which enlarge the scope of the original application will be regarded with jealousy and disfavor does not apply to amendments made before the rights of others have intervened. (Following *Phillips* v. *Sensenich*, 31 App. D. C. 159.)

  . statement by an applicant, in a supplemental oath accompanying an amendment of his application, that he conceived the subject-matter of the amendment prior to the filing of his original application, affords prima facie proof of its truth, which must be overcome by affidavits to the contrary by one who questions its truth.

3. The sufficiency of the supplemental oath of an applicant, accompanying an amendment to his application, is a question for the determination of the officials of the Patent Office.

4. Where, in an interference, it appears that the junior party showed prior conception and disclosure of the interference in certain earlier applications, he will not be held wanting in diligence because he waited fifteen months after the senior party entered the field before filing his application, when he was awaiting the final ruling of the Patent Office on his earlier applications to determine the advisability of filing a separate application; nor will the fact that he waited nine months before amending one of such applications show that he was not prosecuting it with diligence.

No. 597. Patent Appeals. Submitted November 16, 1909. Decided December 14, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.    ᵒ

*Mr. C. V. Edwards* and *Mr. Eugene C. Brown* for the appellant.

*Mr. George E. Cruse, Mr. Clarence P. Byrnes,* and *Mr. Charles H. Duell* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding. The Examiner of Interferences awarded priority of invention to appellant, Samuel Marsh Young, which decision was reversed by a majority of the Board of Examiners-in-Chief, the latter decision being subsequently affirmed by the Commissioner.

The invention in issue consists of certain improvements in automatic electric signaling systems for electric railways. When signaling systems of this character are used on railways using steam as a motive power, the track rails are divided into block sections, electrically separated from one another by means of insulated joints. Signals and batteries connected with a relay are then so arranged that, when a car enters a block section, the wheels and axles short-circuit the track rails, thereby shunting the current from the relay, which, becoming de-energized, drops its armature, and sets the signal to indicate danger. After the car leaves the block, the current is permitted to again flow through the relay, causing the armature to be raised, and the signal restored to the safety position. When the need for electrical signaling arose for use on electric railways, a different and more serious problem was presented. It was customary to utilize the rails as conductors for the return of the propulsion current. In adapting this system to electric railways, it was necessary, prior to the invention here in issue, to divide one of the rails into

blocks insulated from each other, and confine the power current
to the other rail, which was made electrically continuous. Thus,
only one rail could be used as a return conductor. This proved
objectionable for many reasons, one of which being that, should
the electrical connection formed by this single rail become broken
at any point along the line it would stop the operation of the
entire road. To obviate this difficulty, what is known as the
two-rail system was devised, in which an alternating current
differing in character from the direct current used for propul-
sion purposes was employed in the track signaling circuit. In-
ductive resistances, which would permit the direct or propulsion
current to flow freely, but which would choke back the alternat-
ing or signaling current, were substituted for the insulation be-
tween the rails. By this means, it was possible to utilize both
rails for the return of the track current to the generator. This
latter system is the invention involved in this interference.

The issue comprises thirteen counts. Count 1 presents the in-
vention in its broadest aspect, and reads as follows:

"1. In an electric railway signaling system, employing a
closed signal controlling track circuit, a plurality of block sec-
tions, one rail being divided into insulating sections correspond-
ing to the block sections, a signal for each block section operable
by an alternating current, a source of alternating current for said
signals, a source of direct current for propelling the railway cars,
and means for permitting the direct current to pass from one
insulated rail section to another, and for preventing alternating
current from passing from one insulated rail section to another."

Counts 2 to 6 and 10 to 12 are merely restatements of the
same invention. Counts 8 and 9 contain the limitation that each
rail separately serves as the return for the direct current, and
counts 7 and 13 include reactance bonds connected across the
rails. Count 7 is as follows:

"7. In an electric railway signaling system employing a
closed signal controlling track circuit, a plurality of block sec-
tions, one rail being divided into insulated sections correspond-
ing to the block sections, a signal for each block section oper-
able by an alternating current, a source of alternating current

for said signals, a source of direct current for propelling the railway cars, means for permitting the direct current to pass from one insulated rail section to another and for preventing alternating current from passing from one insulated rail section to another, and one or more inductive bonds connecting the rails."

Appellant filed his application April 25, 1903; while appellee's application was not filed until March 4, 1904. The earliest date alleged by appellant for conception and disclosure of the invention is December, 1902. Appellee, Jacob B. Struble, has introduced in evidence two applications, one filed on November 16, 1901, and the other on March 12, 1902, which, he claims, disclose, as originally filed, the invention here in issue; or, if not, it is disclosed by certain amendments filed in April, 1902. On the other hand, it is contended by appellant that these applications relate to the one-rail system, and neither, before nor after amendment, disclose the invention in controversy; and that, conceding that the amendments of April, 1902, do disclose the invention, such disclosure would constitute new matter, and therefore not properly made in these applications.

FIG. 3.

The application of November, 1901, contained a fragmentary view (Fig. 3), showing the contiguous ends of a pair of rails, with a helix connecting them, and described as "a detail view of the rail joint." The only reference made to this figure in the specification, and which would suggest a two-rail system, is the following: "As an alternating current is employed in the track circuit, resistances 5a may be substituted for the insulation." Whether this statement discloses the elements of the counts of the issue, we need not discuss, for, on April 8, 1902, the following amendment was filed, which was not considered

by the Examiner of Interferences in awarding priority to appellant, and which was held by the majority of the Board of Examiners-in-Chief and the Commissioner, with whom we agree, to unquestionably describe the invention: "As an alternating current is employed in the track circuit, provision may be made for utilizing both lines of rails as return conductors for the direct or motor current by connecting the insulated or electrically separated ends of the rail sections 2 by inductive resistances 5a as shown in Fig. 3. As is well known, these resistances will prevent the flow of alternating currents through them, but will not present any material resistance to the flow of direct currents."

The following claims also formed part of this amendment:

"3. In an electric railway signaling system, the combination of a series of rail sections having adjacent ends insulated or electrically separated from each other, and inductive resistances connecting the rails of adjacent sections whereby alternating currents are confined to the track circuits, and the direct or motor currents are permitted to flow from rail section to rail section.

"4. In an electric railway signaling system, the combination of a series of rail sections having adjacent ends insulated or electrically separated from each other, said rail sections forming portions of track circuits, a source of alternating currents included in the track circuits, inductive resistances connecting adjacent ends of rail sections and forming a path from section to section for direct currents, and a source of direct currents having one pole connected to the lines of rails, substantially as set forth."

In the course of the proceedings in the Patent Office, the question of new matter was passed upon by three Primary Examiners, all of whom agreed that the original specification and drawings warranted the amendments. This position was subsequently affirmed by the Board of Examiners-in-Chief and the Commissioner of Patents. It is not necessary for us to consider this question at length. It is true, as was said by the Supreme Court in Chicago & N. W. R. Co. v. Sayles, 97 U. S.

554, 563, 24 L. ed. 1053, 1057, that "courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use." But a different rule prevails where, as in this case, the applicant has amended his application before the rights of others have intervened. In *Phillips* v. *Sensenich,* 31 App. D., C. 159, this court said: "The amendment in this case was made, also, before Phillips filed his application, and there are no questions of estoppel to operate against the exercise of the right under the recognized practice." And in *Kirchberger* v. *American Acetylene Burner Co.* 64 C. C. A. 107, 128 Fed. 599, it was said: "It is contended, therefore, that the original specification failed to describe the process covered by the patent in suit, and that claims 1 and 2 of the patent are invalid. This contention is unsound, for the following reasons: (1) The amendment was filed within three months after the filing of the original specifications, and before, so far as appears, other inventors whose rights had been prejudiced had entered the field. *Chicago & N. W. R. Co.* v. *Sayles,* 97 U. S. 554, 24 L. ed. 1053. (2) The original drawings and specifications sufficiently show and suggest the claims finally made, or at least are not inconsistent therewith. *Hobbs* v. *Beach,* 180 U. S. 383, 45 L. ed. 586, 21 Sup. Ct. Rep. 586. (3) Subject to the foregoing rules, an inventor may amend his specification so as to include therein all the advantages within the scope of his invention. *Singer Mfg. Co.* v. *Cramer,* 48 C. C. A. 588, 109 Fed. 652, 658."

But counsel for appellant contends that this amendment should not be considered, for the reason that no evidence was presented by appellee to show that he conceived the subject-matter of the amendment prior to the filing of the November application. We are not impressed with this contention. The amendment was accompanied by a supplemental oath setting up that fact. Appellee's sworn statement furnishes prima facie proof of its truth, which must be overcome by evidence to the contrary. No such

evidence appears in this record. To hold otherwise would make it incumbent upon a party to an interference, by affirmative testimony, to prove all the averments in his oath before being permitted to rely upon his filing date. Neither do we agree with the contention that the supplemental oath is insufficient to support the amendment because it omitted the clause alleging that the invention was "not patented in a foreign country on an application filed more than twelve months before his application." This averment was required by the rules of the Patent Office, and it was for its officials to determine the sufficiency of the oath. In *Seymour* v. *Osborne,* 11 Wall. 516, 20 L. ed. 33, considering this question, the court said: "Extended examination of the question, however, is unnecessary, as every one of the letters patent on which the suit is founded contains the recital that the required oath was taken before the same was granted, and the court is of the opinion that those recitals, in the absence of fraud, are conclusive evidence that the necessary oaths were taken by the applicants before the letters patent were granted."

It must, therefore, be held that appellee has proven conception and disclosure of this invention at least as early as April, 1902, eight months prior to the date claimed by appellant.

Whether or not these earlier applications, as contended for by counsel for appellee, and as found by the Commissioner and Board of Examiners-in-Chief, constitute a constructive reduction to practice of the invention in issue, we may pass without opinion. We have concluded that they fully establish conception and disclosure, and, if appellee was exercising due diligence between December, 1902, the time appellant entered the field, and March 4, 1904, appellee's filing date, he must prevail. During this period, appellee was prosecuting the earlier applications, which contained claims to the subject-matter of this issue; and it must be held that he was justified in awaiting the final rulings of the Patent Office in order to determine the advisability of filing a separate application. But it is contended on behalf of appellant that appellee was not prosecuting these applications with diligence, in that he took no action

between the date of the amendments, April 8, 1902, and January, 1903. This, we think, is not an unreasonable length of time in which to amend an application,—especially in view of the fact that one year is allowed before an application is declared abandoned.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. *Affirmed.*