# YOUNG *v.* STRUBLE.

PATENTS;. INTERFERENCE; SPECIFICATIONS AND CLAIMS; AMENDMENTS; ANTICIPATION; FOREIGN PATENTS.

1. In an interference involving an invention relating to a block system for electric railways, where both parties relied on earlier applications to show constructive reduction to practice, it was *held* that an amendment by the junior party, antedating the senior party's earliest application, disclosed the invention of the issue, and ˙that a statement in such amendment, claimed by the senior party to limit the invention described in the application which it amended, did not have that effect.

2. *Young* v. *Struble*, 34 App. D. C. 218, applied and followed.

3. Prior applications of one of the parties to an interference, which are found to have disclosed the invention of the issue, cannot be said to have been anticipated by British patents granted him for the same invention described in such applications, where the applications in interference were filed within two years after the grant of the British patent. (Construing sec. 4886, Rev. Stat., U. S. Comp. Stat. 1901, p. 3382.)

4. Where amendments are made to an application before another party has entered the field, the rule prohibiting the insertion of new matter by amendment will not be applied as strictly as where it is sought to enlarge the scope of an application to the prejudice of inventors whose rights have accrued between the date of filing and the date of amendment.

No. 636. Patent Appeals. Submitted May 11, 1910. Decided June 1, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.     *Affirmed.*

The facts are stated in the opinion.

*Mr. Clifton ˙V. Edwards* and *Mr. Eugene C. Brown* for the appellant.

*Mr. George E. Cruse* and *Mr. Livingston Gifford* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding. The Examiner of Interferences awarded judgment of priority to appellant, Samuel Marsh Young, which decision was reversed by the Board of Examiners in Chief, which latter decision was affirmed by the Commissioner. The invention in issue is well described in the opinion of the Examiners in Chief, as follows: "The invention involved relates to a block signaling system for electric railways, the object being to subdivide the track to permit the use of electric block signals, and yet retain the use of both rails for the return of the power current. For this purpose one of the rails is continuous and the other made in insulated sections corresponding in length to the required blocks. A source of alternating current is connected across the rails of each section, and normally maintains a current in the signal relay, which, however, is short circuited by the entrance of a car into the block, permitting the signal to go to danger. A path for the power current from section to section of the divided rail is furnished by inductance bonds, which have the capacity of choking back the alternating current, and confining that from each source to its particular section, to prevent its interference with the signals of adjoining sections. At each insulation between sections there are two or more of these bonds, which carry the current from the end of one section across to the continuous rail and thence back to the adjacent section of the divided rail."

The issue is embodied in six counts, count 1, however, being sufficient to illustrate the issue raised by the first five counts. Count 6 is more generic and requires separate consideration. They read as follows:

"1. A signaling system comprising a source of propulsion current, a source of signaling current, a trackway divided into block sections, means for exciting a difference of potential between the rails of the block sections, reactance bonds connected across the rails at each end of a block section designed to

transmit the propulsion current without saturation or loss of required reactance, and a signaling device in each block section."

"6. In a signaling system the combination of a source of propulsion current, a source of signaling current, a trackway divided into block sections, means for impressing signaling current upon each block section, means for confining the signaling current to the limits of each block section, and means whereby the rails of the block sections shall serve as separate returns for the propulsion current."

Appellee, Jacob B. Struble, filed his application for patent on March 4, 1904, while appellant's application was not filed until February 8, 1906. The Patent Office, however, accorded appellant the date (November 6, 1903) of an earlier application which disclosed the invention in issue, thereby making him the senior party. He took no testimony, but relies solely upon this application for evidence of conception and disclosure, as well as for constructive reduction to practice, of the invention in issue. Appellee, however, has offered in evidence two applications, one filed November 16, 1901, and the other March 12, 1902, upon which patents were issued May 1, 1906. These were held by the Examiners in Chief and the Commissioner of Patents to constitute a constructive reduction to practice. Whether or not these applications as originally filed disclose the system here before us, it will be unnecessary to consider, for, on April 8, 1902, certain amendments were made in which it is undoubtedly shown and described. In the application of March 12, 1902, the following matter was inserted: "The reactance coils when connected across the rails, as shown in Figs. 2 and 3, will permit a portion of the direct current to flow from

the rail 4 to the sections 1, 2, 3, etc., and when such coils are arranged so that the ends of the sections are connected to the rail 4, a portion of the direct current will flow from rail 4 to one end of the sections along the same and then back to rail 4, along which the whole current will flow until it reaches the coil 17 connecting the rail 4 to the next section, so that only portions of rail 4 will carry the full return current. If the sections be connected by reactance coils, as shown and described in application No. 82,523, filed November 16, 1901, both lines of rails can be used as return for the motor current."

It is urged by counsel for appellant that this description fails to state that the reactance bonds are "connected across the rails at each end of each section," as called for by counts 1 to 5, inclusive, and therefore does not disclose a two-rail system. This amendment, however, describes a system in which a portion of the return current will flow through reactance bonds from one section of the divided rail to the rail 4, which is made electrically continuous, thence back to the adjacent section, "so that only portions of rail 4 will carry the full return current." The operation of this system is identical with that called for by the issue, and a reference to the amended drawings shows inductance bonds placed at each end of each section. But appellant contends that the final sentence of the amendment, in which it is stated that, "if the sections be connected by reactance coils," as shown in the November, 1901, application, "both lines of rails can be used as return for the motor current," implies that, in the system just described, both lines of rails could not be so used. It must be remembered, that, in the invention here in issue, the sectional rail is not a continuous conductor, but must operate in conjunction with the return rail. At the points opposite the insulation, the unbroken rail must carry the whole current. We think that the statement under consideration refers only to means for making the sectional rail a continuous conductor, and does not limit the invention previously described.

As to the sixth count, it is contended that the applications do not disclose "means whereby the rails of the block sections shall serve as separate returns for the propulsion current." In

a case between the same parties (*Young* v. *Struble* [decided December 14, 1909] 34 App. D. C. 218), this court held that the application of November 16, 1901, as amended, did disclose such means. It is, therefore, unnecessary to further consider this question.

Appellant also contends that to hold that the applications of November, 1901, and March, 1902, disclose the invention here before us is, in effect, to hold that the issue is anticipated by two British patents, identical with the above applications, which were issued March 20, 1902, and June 19, 1902, respectively. We are unable to see the force of this contention. We have not held that the invention in issue was protected by claims in the earlier applications, but that it was merely disclosed by the specification and drawings. Under sec. 4886 of the U. S. Rev. Stat. (U. S. Comp. Stat. 1901, p. 3382), two years must elapse before the invention disclosed by appellee in the British patents became forfeited and the property of the public. Both appellee's application, the one here in interference, and the one upon which appellant relies for constructive reduction to practice, were filed within that period.

Appellant insists, however, that if these amendments be construed to disclose the invention here in issue, for that reason they constitute new matter, and were improperly inserted in their respective applications. This question was also considered in the earlier case. These amendments were made prior to the time appellant entered the field, and the rule in this instance is far more liberal than where it is sought to enlarge the scope of an application to the prejudice of inventors whose rights have accrued between the date of filing and the date of amendment. Here, as in the case of *Kirchberger* v. *American Acetylene Burner Co.* 64 C. C. A. 107, 128 Fed. 599, "The original drawings and specifications sufficiently show and suggest the claims finally made, or, at least, are not inconsistent therewith."

As these amendments must be held to be at least evidence of conception and disclosure, and as, in the earlier case, appellee was held to be exercising due diligence between the time appellant entered the field and March 4, 1904, the date of ap-

pellee's present application, appellee must, therefore, be
awarded judgment of priority.

The decision of the Commissioner of Patents is affirmed,
and the clerk is directed to certify these proceedings, as by law
required.                                              *Affirmed.*

Mr. Justice BARNARD, of the supreme court of the District
of Columbia, sat with the court in the hearing and determination
of this appeal, in the absence of Mr. Chief Justice SHEPARD.