**WECKERLY et al. v. COE, Com'r of Patents.**

No. 7333.

United States Court of Appeals for the District of Columbia.

Decided Feb. 26, 1940.

Charles O. Marshall, Jr., of Toledo, Ohio, and Theodore A. Hostetler, of Washington, D. C., for appellants.

W. W. Cochran, Law Examiner, United States Patent Office, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

In this case, which was instituted in the District Court by Weckerly and his successor in interest, Toledo Scale Manufacturing Company, to obtain a patent under Section 4915, R.S., 35 U.S.C.A. § 63, the lower court found that: "1. Plaintiff's application in suit discloses a weighing scale and electrically operated means for continuously depositing material thereon, the scale having a weight indicating pointer movable into position to obscure light from a light sensitive electric cell, when a predetermined amount of material has been deposited on the scale, said cell then operating to cut off the supply of electric current to the depositing means and cause the latter to cease operating." To support its determination that Weckerly's device does not amount to invention, the lower court relied upon five references: Rees, No. 1,-845,557; Machlet, No. 1,758,450; Winter, No. 1,589,673; Hayes, No. 1,787,536; and the publication "Das Selen."

The Rees patent discloses—as found by the court—"a weighing scale and electrically controlled means for continuously depositing material thereon, the scale having a weight-indicating pointer movable to a position to cause an electric current to flow between the pointer and a fixed contact and thereby cause the depositing means to cease operating when a predetermined amount of material has been deposited on the scale." This is, for practical purposes, the same apparatus as that described by Weckerly except that the Rees method of electrical control is a "spark gap control." Appellants seek to distinguish their apparatus on this basis, contending, first, that the substitution of the photo-electric control for the spark gap control was not obvious and, second, that it produced so much greater accuracy of result as to make practicable the performing of automatic, precise, weighing operations which could not be performed by prior devices.

In our view the determination of the lower court was correct. The use of photo-electric controls for performing automatic, precise measurements was well known prior to Weckerly's use of it; as is clearly revealed by the references relied on by the court for this purpose. The publication "Das Selen" discloses a photo-electric control in an apparatus for automatically recording variations in weights of material, as where the weight of such material varies as a result of absorption

or dehydration. The Hayes patent discloses the use of a photo-electric control in an apparatus for determining variations in the force of gravity at different points on the earth's surface. Appellants distinguish these references by pointing out that the apparatus disclosed in "Das Selen" "is not a device for automatically weighing out materials, but merely a device for recording the variation in the weight of a substance that gains or loses weight * * *." and that the Hayes photo-electric control merely sends out a radio signal which in turn is recorded by another apparatus. It is obvious that in each case the distinction is immaterial. The important fact is that a photo-electric control is used for precise, automatic measurement, the very basis of appellants' claim of invention. No inventive genius was required to understand that if precise, automatic results could be achieved in such scientific measurements, the same results could be achieved in "weighing out materials" by substituting a photo-electric control for the spark gap control in the Rees apparatus.[1]

Moreover, the Machlet patent discloses a photo-electrically controlled apparatus for regulating the supply of gas to a furnace; and the Winter patent discloses a photo-electrically controlled apparatus for use in maintaining, automatically, the course of a ship. Appellants distinguish these references on the theory that they were not designed to produce precise and instantaneous results. That is true. In each case they were designed to produce approximate results; to prevent extreme departures from the desired mean. But this does not prove that anything approaching the dignity of invention was required to use photoelectric controls to produce instantaneous results. The result was cleary foreshadowed by the references discussed above. If anything, the result produced by Weckerly was an easier one for a skilled mechanic to achieve than the results designed to be achieved in the devices described by Machlet and Winter; particularly in the light of what is disclosed in the Hayes patent and the publication "Das Selen."[2]

We have considered carefully all the points relied upon by appellants and find them to be without merit.

Affirmed.

---

[1] See In re Sweetland, 56 App.D.C. 222, 223, 12 F.2d 163, 164; Willett Mfg. Co. v. Root Spring Scraper Co., 6 Cir., 55 F.2d 858; Western Willite Co. v. Trinidad Asphalt Mfg. Co., 8 Cir., 16 F.2d 446, 448, 449, certiorari denied, 274 U.S. 737, 47 S.Ct. 575, 71 L.Ed. 1317; Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, 223, 224, certiorari denied, 290 U.S. 658, 54 S.Ct. 73, 78 L.Ed. 570; L. Sonneborn Sons, Inc. v. Coe, 70 App. D.C. 97, 100, 104 F.2d 230, 233.

[2] See L. Sonneborn Sons, Inc. v. Coe, 70 App.D.C. 97, 104 F.2d 230; Minnesota Mining & Mfg. Co. v. Coe, 69 App.D. C. 217, 221, 99 F.2d 986, 990; Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794; Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 256, 257, 100 F.2d 429, 430, certiorari denied, 306 U.S. 662, 59 S.Ct. 788, 83 L.Ed. 1059.