41 C.C.P.A.(Patents)
## TANSEL v. HIGONNET et al.
### No. 6050.

United States Court of Customs
and Patent Appeals.
June 30, 1954.
Rehearing Denied Sept. 17, 1954.

Jackson and Johnson, JJ., dissented.

Earl Babcock, Duncan, Okl., Lee B. Kemon and Donald E. Lane, Washington, D. C., for appellant.

Melvin R. Jenney and Kenway, Jenney, Witter & Hildreth, Boston, Mass. (Herbert W. Kenway, Boston, Mass., of counsel), for appellees.

Before O'CONNELL, JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter defined by the two counts in issue to appellees Higonnet and Moyroud, hereinafter referred to as Higonnet.

The invention is regarded as a fundamental advance in the printing art whereby text or copy submitted for the purpose of having it printed is composed direct on film by a method of selective flash photography of the characters instead of the usual method of molding metal to form lines as in a linotype machine.

The complex machinery, wherein a line to be printed is applied to a sheet of photographic material through the operation of a keyboard, like that of a typewriter, was accurately described by the Primary Examiner:

"The invention is in a phototypograph or photographic composing apparatus comprising a rotatable font, or member carrying characters to be reproduced, a photosensitive sheet holder, an optical system to project images of selected characters from the character holder or font, onto the photosensitive sheet, and a lamp capable of giving an extremely bright flash of extremely short duration which will effectually stop the motion of a character image thrown from the rapidly rotating character carrier onto the stationary photosensitive sheet. The characters to be printed are selected on a keyboard, which operates to code the selected characters upon a register, or temporary reservoir, elements of which in turn will condition a certain electrical circuit, so that when a more precise timing means coacts therewith, the intense flash of light will be produced at precisely the correct instant to reproduce a character at precisely the proper position in a line of characters printed on the photosensitive sheet. Means are also provided to step the photosensitive sheet along, in variable amounts, between exposures, to form complete words and complete lines of typing, with proper spacing between successive letters and words."

A number of applications defining the invention, more or less specifically, were filed by the respective parties. The pertinent applications of the senior party Higonnet concern three French applications; the first filed in France, July 11, 1944, PV 26,326, showing a system of slits; and the second application No. PV 26,454 filed in that country November 13, 1944, containing amendments whereby "a device giving a flash of light of very great speed and at the desired instant is substituted for the system of slits." Additional modifications in Higonnet's first French application for a patent, filed July 11, 1944, but not then delivered, were filed in France by Higonnet on June 2, 1945, PV 42,337, from which disclosure the application involved in this interference, No. 610,336, filed in the United States Patent Office Au-

gust 11, 1945, was derived. The board held, however, that appellees' application PV 26,454, filed in France on November 13, 1944, was ineffective as a clear disclosure of the involved invention for the basic reason that the application contained no "reference to parts in the drawing of the earlier patent [PV 26,326] by reference numeral or other specific designation."

Tansel filed his original application, No. 604,474, July 11, 1945, the specification and drawings of which disclosed the photo-electric flash control device in issue. Thereafter on October 27, 1948, Tansel filed his third application, the one here involved, No. 56,880, which application is in turn a division of his parent application, No. 753,273, filed June 7, 1947, as a continuation-in-part of appellant's original application No. 604,474, hereinbefore described.

The latter defines the mechanical contact breaker point controls which Tansel substituted for his original photo-cell control device for controlling the timing of the flash. This substitution was made by Tansel while constructing his machine, Exhibit 59, and prior to his filing date of July 11, 1945.

Tansel in filing his second and third applications made known therein his intent not to abandon, and he did not thereby abandon, the invention defined by the terms of his original application. Appellant was therefore entitled under the statute to the filing date of his original application, although, in order to expedite his achievement, he included in his subsequent application, No. 56,880, the mechanical contact breaker point controls for his original photo-cell control device. In re Febrey, 135 F.2d 751, 30 C.C.P.A., Patents, 1099; Harder v. Hayward, 150 F.2d 256, 32 C.C.P.A., Patents, 1051; 35 U.S.C. § 120. See also 69 C.J.S., Patents, § 113g, pages 474–475; Walker on Patents (Deller's Ed.) Vol. II, pages 873–874.

It is generally acknowledged that each of the two control devices respectively described by appellant are the equivalent of one another and may be used alternatively to perform substantially an identical function. It is specifically acknowledged by appellee Higonnet in application PV 26,326: "It is clear that in all these arrangements it is possible to use, instead of contacts, photoelectric cells and electronic relays, with which higher speeds of operation are possible." Moreover, as correctly suggested in appellant's brief, citing Robbins v. Steinbart, 57 F.2d 378, 19 C.C.P.A., Patents, 1069; and Weckerly v. Coe, 71 App.D.C. 378, 110 F.2d 699:

> "The situation might be somewhat different if Counts 1 and 2 were directed to a precise control device, *per se*. But here both Counts are directed to combinations and both parties admit that precise control devices, *per se*, are old."

Had they been otherwise, appellant may well have had the additional burden of proving their commercial utility by actual reduction to practice, aside from the combination, even though there is no requirement in either of the counts which calls for a photo-electric device or any other form of precise control for the flash. Triplett v. Steinmayer, 129 F.2d 869, 29 C.C.P.A., Patents, 1243.

Limitations not included in the counts cannot be subsequently read into them. Martin v. Friendly, 58 F.2d 421, 19 C.C.P.A., Patents, 1181, and questions of inoperativeness relating to any part of the disclosure outside the issues defined by the limitations of the counts are not relevant or material to the issue presented. Prahl v. Redman, 117 F.2d 1018, 1021–1023, 28 C.C.P.A., Patents, 937, 941, 943. Moreover, the counts of the interference should be given the broadest interpretation which they will reasonably support. Deibel v. Heise & Schumacher, 46 F.2d 570, 571, 18 C.C.P.A., Patents, 907, 909.

The interference was declared to exist by the Patent Office on June 27, 1950. Count 1 was there derived from the subject matter defined by claim 25 of Tansel's application and claim 53 of Higon-

net's; Count 2 from claim 26 of Tansel's application and claim 60 of Higonnet's. Both of said applications, as hereinbefore described, were then co-pending in the Patent Office. The counts read:

"1. Photographic composing apparatus comprising a manual keyboard and means for displaying characters of written matter, a register for storing information corresponding to a line of characters and interword spaces of said written matter, a character carrier comprising a rigid continuously rotatable member on which characters of different widths are displayed at uniform distances from the axis of rotation, means for supporting a sensitized sheet having provision for advancing the sheet for line spacing, projection apparatus for projecting characters from said character carrier on to the sensitized sheet, a movable carriage to cause the characters to be projected to successive portions of the sheet, an intermittent discharge tube having a discharge time which is short in comparison with the time of passage of a character past the projection apparatus, a discharge control circuit for the tube, switches controlled by the register for operating the discharge control circuit to energize the tube to successively project selected characters on the sensitized sheet, and mechanism controlled by the register for variably moving the carriage in accordance with the character and interword widths.

"2. Photographic composing apparatus comprising a manual keyboard and means for displaying characters of written matter, a register for storing information corresponding to a line of characters and interword spaces of said written matter, a character carrier comprising a rigid continuously rotatable member on which characters of different widths are displayed at uniform distances from the axis of rotation, means for supporting a sensitized sheet, projection apparatus for projecting characters from said character carrier on to the sensitized sheet, a movable carriage to cause the characters to be projected to successive portions of the sheet, an intermittent discharge tube having a discharge time which is short in comparison with the time of passage of a character past the projection apparatus, a discharge control circuit for the tube, a rough control device and a precise control device for the circuit, both synchronized with the character carrier, the rough control device determining an interval in which a discharge is to occur and the precise control device determining the precise instant of discharge within said interval, selector switches for the several characters controlled by said register and included in the discharge control circuit, whereby the discharge tube is energized only under the joint action of the register and of the rough and precise control devices to successively project selected characters on the sensitized sheet, and mechanism controlled by the register for variably moving the carriage in accordance with the character and interword widths."

On February 24, 1951, Higonnet moved that the interference be dissolved on the grounds:

"I. That Count One is unpatentable over the prior art.

"II. That Count Two is met by the prior art if construed broadly enough to read on the Tansel application.

"III. That Tansel's disclosure is inadequate to support the counts. In the Brief filed by Higonnet and Moyroud on October 29, 1951, this motion was withdrawn, as to the inoperativeness of Tansel's disclosure."

In such proceedings Higonnet alleged that "Count 2 differs from count 1 only in the inclusion of the rough and precise

controls, both synchronized with the character carrier."

Higonnet's motion to dissolve was denied by the examiner with respect to all of the grounds recited therefor. It is deemed pertinent for subsequent reference to reproduce the examiner's decision with respect to points II and III:

"II. Regarding the motion to dissolve as to Count Two being not readable on Tansel's disclosure, it is held that Count Two is patentable, and, construed as broadly as the language will permit, reads upon Tansel's disclosure. This count adds to Count One the 'rough' and 'precise' control devices for flashing the lamp. Both applicants disclose some apparatus to this effect, but the count is allowable for the same reasons as Count One, as discussed above. The electrical circuit between the register * * * and the pin setting solenoids * * * is the 'rough' control of Tansel, and the revolving switch * * * is the 'precise' controlling and firing means.

"III. In the Brief filed by Higonnet et al, this motion was withdrawn as to the inoperativeness of Tansel's disclosure. It appears to the Examiner that the Tansel disclosure is sufficiently adequate to enable anyone skilled in this art to construct such a machine, and to make it function as it is said to do. All the elements are of types known from this or other related arts."

Having conceded to Higonnet, the French filing date, June 2, 1945, for conception and constructive reduction to practice, appellant Tansel assumed the burden of proving actual reduction to practice of the invention of the counts, and proving it by a preponderance of evidence. Pines v. McAllister, 188 F.2d 388, 38 C.C.P.A., Patents, 981, 983.

Higonnet conceded that Tansel conceived of the machine shown in the eight pages of his drawings and described in the specification of appellant's original application, No. 604,474, prior to June 2, 1945. Tansel's diligence from 1943 to January of 1946 was acknowledged by the board with respect to his filing dates and construction and operation of a machine, Exhibit 59, completed during that time in accordance with the disclosures of his two applications hereinbefore described. Tansel in support of his position submitted here the machine completed in 1946, Exhibit 59, and a motion picture taken in 1946, Exhibit 58, showing the machine in actual operation.

The board held that Tansel's evidence did not sustain his burden of proof with respect to the successful operation of the photo-electric flash control device shown in his original application No. 604,474, and in so holding, the board relied upon the argument advanced by appellees, who on their part, had taken no testimony, made no tests, nor submitted any evidence. As observed in appellant's brief:

"The charge of inoperativeness is based on the fact that a short time before he filed application Serial No. 604,474, Tansel built a machine like that disclosed therein, and in the course of such work removed the photo-electric arrangement and submitted an equivalent flash control device [consisting of the mechanical breaker point controls hereinbefore described]."

The substitution by Tansel of the breaker point controls by way of modifying the means by which the desired result was ultimately attained, did not of itself establish the inoperativeness of the photo-electric arrangement previously tested by appellant. On the contrary, Tansel's evidence with respect to his test of that device established that while he and Harder, the electrician whom Tansel had hired to help build the machine, had admittedly encountered difficulty in arriving at proper operation of the precise photo-cell selector, they were satisfied from its performance in the tests that the device could have been eventually and successfully operated not only by themselves but also by any person

skilled in the art; and that the breaker point controls were given the preference by appellant because, as Tansel testified, "We thought we could proceed faster with the breaker point mechanism."

■ In any event, the burden was upon Higonnet to establish by a proper showing the inoperativeness of appellant's photo-electric device for controlling the timing of the flash precisely. Field v. Knowles, 183 F.2d 593, 600, 601, 37 C.C.P.A., Patents, 1211. In that case this court unanimously held, as a matter of law, that there is "a different basis for evaluating the standard of operativeness required for a patent application disclosure to be considered operative, and the standard of operativeness required to establish that the disclosure of the application is actually reduced to practice".

"We agree with the board that the alleged inoperativeness of the senior party's disclosure here must be evaluated on a basis different from conception and reduction to practice. * * * A senior party might be unable to prove conception and actual reduction to practice due to his failure prior to his filing date to bring to an operative state a machine showing practical utility for its intended purpose, without justifying the conclusion that the junior party has carried his burden of proving by a preponderance of the evidence that the disclosure of the senior party's application could not be made to operate successfully under the application of the representative skill in the art."

■■ The standard required for the proof of inoperativeness hereinbefore described is likewise applied where the party relying on that ground as the basis for the award of priority is the junior and not the senior party. On that point as well as others, we fully agree with the views expressed in this case in the dissent written by P. J. Heyman, a member of the Board of Interference Examiners: "Higonnet and Moyroud in con-

tending inoperativeness of Tansel's application disclosure of July 11, 1945 have not carried the burden of their contention where the admission they rely upon is defective in requirements they would have to satisfy in the taking of actual proofs.

"For the requirements necessary to establish inoperativeness of an opponent's application disclosure it is not necessary to cite further than Field v. Knowles, 183 F.2d 593, 37 C.C.P.A., Patents, 1211, 1950 C.D. 521, 640 O.G. 697. In this decision the court with comprehensive citation of earlier cases exhaustively reviewed this phase of patent law. In the extracts below from that decision it should be borne in mind that Field who made the contention of inoperativeness was the junior party whereas in this case Higonnet and Moyroud who make the contention are the senior party. This makes no intrinsic difference for it is self-evident that inoperativeness of an application, not inoperative on its face and thus not criticized by the Patent Office on that ground, is not a self-proving proposition and whoever makes the contention, whether junior or senior, has the burden of proceeding with respect to his contention.

"From the following excerpts from Field v. Knowles it is apparent that the party contending inoperativeness of his opponent's application disclosure may prevail in his contention if he fulfills certain requirements. If he conducts *inter partes* tests on a reconstruction of his opponent's device he must show that the device cannot be made to operate even with such modifications and alterations short of invention as would occur to and be made by a person skilled in the particular art genuinely interested in making the device operate. What is particularly important to the case at hand is that Field v. Knowles further makes it clear that if the contending party does not conduct *inter partes* tests but relies upon evidence furnished by his opponent that evidence in equivalent manner must fulfill the same requirements. * * *

"Count 1 reads upon application Ser. No. 604,474 of Tansel, which does not appear inoperative on its face and which was never criticized by the Primary Examiner as being inoperative. If Higonnet and Moyroud have not carried their burden of showing that the July 11, 1945 application disclosure of Tansel is inoperative then the filing and prosecution of that application which was co-pending with Tansel patent application Ser. No. 753,273 demonstrates at least reasonable diligence for Tansel as to count 1 in the critical period. Tansel was the first to conceive the invention but the last to reduce it to practice, having demonstrated reasonable diligence in the critical period would be entitled to prevail as to count 1."

■ The capacity to perform in the manner intended for the machine in issue, though only in a crude way, is sufficient to discharge the inventor's burden of proof for actual reduction to practice. Hildreth v. Mastoras, 257 U.S. 27, 34, 42 S.Ct. 20, 66 L.Ed. 112; Williams v. Handschiegl, 48 F.2d 395, 18 C.C.P.A., Patents, 1176.

As hereinbefore described, count 2 differs from count 1 only in the inclusion of the rough and precise controls, both synchronized with the character carrier. The photo-cell arrangement defined by count 1 gave Tansel and Harder considerable difficulty in arriving at a satisfactory operation mainly due to a described contact bounce. Harder testified: "This contact bounce interfered with proper operation of the precise photo-cell selector and while the system could eventually have been worked out, we decided that it would be better to simplify the whole mechanism. We substituted a different character selector, which is that now on Exhibit 59 and which uses mechanical motions of solenoid armatures for a rough control and impingement of rotating contacts against the selected solenoid armatures for precise control."

It is stated in appellant's brief on this particular point, omitting certain numerical references to the record: "So Tansel decided to take the photo-cell precise control off and put on instead breaker point contacts, which 'fired' the circuit by discharge of a condenser through an automobile ignition coil. This is the arrangement shown in Figure 8 of application Serial No. 56,880 and it is what is on the machine, Exhibit 59, which was completed in 1946."

On the same point, Harder further testified:

"Q. Let's turn to Count 2 and I don't think we need repeat all the elements but I'll state to you in general that this count is the same as Count 1 except that it also calls for rough and precise control for the circuit which regulates the flash discharge and I gather from your testimony here today that this machine Exhibit 59 has both rough and precise control. Is that correct? A. Yes, that is right. We have described the rough and precise control previously.

"Q. And the flash is energized only under the joint action of the register and the rough and precise control devices? A. Yes.

"Q. And now the application. This first one, filed in July, 1945, that is, Serial No. 604,474, does it disclose each of the elements of these counts? A. Yes, as I've been explaining today, Application 604,-474 discloses everything that is in the machine Exhibit 59, or its equivalent, and in addition, the application discloses some parts that never were constructed on the machine, Exhibit 59. As always, there are several possible ways to do a particular job and the precise and rough controls are one of those. * * * "

It appears that both counts in issue read upon appellant's disclosures. It further appears that count 1 reads on Tansel's machine, Exhibit 59, and that a direct disagreement exists between the tribunals of the Patent Office as to

whether Exhibit 59 has both a rough and precise control for the flash, both synchronized with the character carrier, as defined in count 2.

The Primary Examiner imposed no restriction on the breadth of the interpretation of count 2 and the board in construing the language thereof apparently limited its meaning to the exact construction disclosed by Higonnet instead of construing it as broadly as its language will permit.

The board in rejecting Tansel's contention regarding Exhibit 59, held that he did not establish due diligence in reducing to practice the justifying mechanism thereof by January of 1946. Reasonable diligence as required by the patent laws relates to the circumstances disclosed by the record in each particular case. Young v. Struble, 34 App.D.C. 218. There is testimony that Tansel's efforts were continued after January of 1946 and that his justifying apparatus was reduced to practice at least by the summer or early fall of 1946. Furthermore, the counts contain no limitation requiring that appellant complete this reduction to practice as part of his basic system. The linotype machine as first produced by Mergenthaler did not include any justifying apparatus and was wanting in "perfect justification," but the court, Mergenthaler Linotype Co. v. Press Pub. Co., C.C., 57 F. 502, 505, 506, held the patent valid:

"This general statement of opinion as to the scope of the patents eliminates from the discussion many of the minor criticisms urged by the defendants. The proposition upon which they appear to lay the greatest stress is that neither patent describes or claims an operative machine because neither is capable of 'perfect justification,' viz.: making lines of exactly the same length. Their contention proceeds upon the untenable proposition that the machine which produced the 'linotype' was valueless because it did not produce an absolutely perfect 'linotype.' Such a proposition, if sustained, would condemn to obscurity some of the greatest works of human genius. * * * The defect was one that was at once suggested by printers, and the patentee and others immediately set to work to remedy it. This was not a difficult task and was soon accomplished. * * *"

The board likewise found that Tansel did not make printing plates from the film used in testing Exhibit 59, which otherwise "operated with something less than commercial printing quality." The authorities set no such standards for measuring the patentability of the invention of the counts. Hildreth v. Mastoras, 257 U.S. 27, 34, 42 S. Ct. 20, 66 L.Ed. 112; Leichsenring v. Freeman, 103 F.2d 378, 381, 26 C.C.P.A., Patents, 1153, 1158.

For the reasons hereinbefore stated, it is our opinion that the junior party, Tansel, has met his burden of proof and it follows that the decision of the board, awarding priority of invention of the two counts of the interference to the senior party, Higonnet and Moyroud, must be, and hereby is, reversed.

Reversed.

JACKSON, J., retired, sat for GARRETT, C. J.

JACKSON, J., and JOHNSON, J., dissent.