**MERCK & CO., Inc., and Kyowa Hakko Kogyo Co., Ltd.**

**v.**

**COMMERCIAL SOLVENTS CORPORATION.**

**Civ. A. No. 13574.**

United States District Court
D. Maryland.

Jan. 7, 1964.

**319**

John Henry Lewin, Baltimore, Md. (Venable, Baetjer & Howard), Baltimore,

Md., for plaintiffs. Stephen H. Philbin and E. Cummings Sanborn, New York City, of counsel.

David R. Owen, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md.), for defendant. Roger T. McLean and John W. Routh, New York City, of counsel.

R. DORSEY WATKINS, District Judge.

Plaintiffs have filed suit for alleged infringement by defendant of:

(a) United States Patent No. 3,002,-889 ('889) issued on October 3, 1961, to plaintiff Kyowa Hakko Kogyo Co., Ltd. (Kyowa) for "Method of Producing L-Glutamic Acid", and

(b) United States Patent No. 3,003,-925 ('925) issued on October 10, 1961, to Kyowa for "Method of Producing L-Glutamic Acid by Fermentation."

It is alleged that plaintiff Merck & Co., Inc. (Merck) is the exclusive licensee of these two patents.

Defendant moved for entry of summary judgment in its favor on the following grounds:

"1. Each of the patents is invalid because the subject matter thereof was first patented or caused to be patented by the applicants or their legal representatives or assigns in a foreign country prior to the effective date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States (USC, Title 35, Section 102(d)).

"2. Each of the patents is invalid because the subject matter thereof was in public use in the United States more than one year prior to the effective filing date of the application on which each patent issued (USC, Title 35, Section 102 (b))."

The motion was supported by thirty-one exhibits, including patents, file wrappers, depositions and articles.

Later the following ground was added:

"3. Patent 3,003,925 ('925) is invalid and unenforceable because based upon an oath which was false and misleading in respect of a material fact which led the Patent Office to grant, instead of denying, the patent."

Memoranda and reply memoranda were filed, and the case was fully argued orally.

In Stevens v. Howard D. Johnson Co., 4 Cir. 1950, 181 F.2d 390, 394, the Court of Appeals for this circuit expressed considerations peculiarly applicable to the instant motion. The court said:

"The motion for summary judgment, authorized by rule 56 Federal Rules of Civil Procedure, 28 U.S. C.A., which in effect legalizes the 'speaking' demurrer, has an important place in providing a prompt disposition of cases which have no possible merit and in preventing undue delays in the trial of actions to which there is no real defense; but it should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of law. See Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, 146; Wexler v. Maryland State Fair, 4 Cir., 164 F.2d 477. And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom."

Under these principles the motion for summary judgment should be, and is, denied. The importance of the litigation, and the earnest and extended efforts of counsel, justify, if they do not require, some statement of the more significant grounds for the court's ruling.

1. Patenting by applicant in a foreign country prior to effective date of application for patent in this country on an application filed more than twelve months before the filing of the application in the United States. 35 U.S.C. 102(d).

(a) Patent '889.

This patent issued on October 3, 1961 on application Serial No. 37,078 filed June 30, 1960, allowed as a continuation-in-part of application Serial No. 717,841 filed February 27, 1958.

Belgian patent 555,316 was granted to Kyowa on March 15, 1957 on an application filed February 26, 1956. Defendant contends, apparently correctly, that the patent "was open to inspection and in force in Belgium prior to February 27, 1958." [1]

Defendant further contends that "[F]or all practical purposes, Belgian patent 555,316 is a translation of Japanese application No. 27482/56 filed in Japan on October 29, 1956", and that the oaths in the applications on which '889 issued state that no application for patent on that invention, discovery or subject matter had been filed except this Japanese application.

Defendant does not seek to, and could not if it did, equate all the *claims* of Belgian 555,316 with those of '889. Its position is that the invention patented in a Belgian patent is determined by the entire document, and extends to whatever novel and inventive matter is disclosed therein, the claims ("revendications") being a "summary" and not definitive of the invention as are the claims in United States patents. Support for this position is found in the deposition of defendant's expert. [2]

---

1. Defendant's expert testified by deposition that:

"A patent is granted without examination and delivered without any guarantee of validity. It is only the courts * * * that is [sic] the judge of the validity of a patent." (Braun deposition, page 81).

"The date of the patent is the date of application. The duration of the patent starts at the date of application." (id., page 82).

A patent is open to the public in three months after the application is filed unless an "extension" is asked. If so, the patent will be open to the public after six months, but no longer. (id., pages 82–83).

2. Braun deposition, pages 87–90.

Plaintiffs filed a deposition of another Belgian expert stating that the Belgian law with respect to patents was to be found in certain cited court decisions and texts. The court decisions directly hold that the protection afforded a patentee is limited to the claims[3]; to "what is clearly and unequivocally asked for"[4]; and that "it is not sufficient that one can discover novel features therein; it is also necessary that the patent application contain the claim of the invention. * * *"[5]

The texts are in general, but not entirely, to the same effect.

 The preponderance seems clearly on the side of plaintiffs. At the very least, there is a decided conflict as to the correctness of defendant's contention with respect to the Belgian law.[6] The court cannot, on the present record, hold '889 invalid in its entirety under 35 U.S.C. 102(d).

(b) Patent '925.

This patent issued on October 10, 1961 on application Serial No. 37,593, filed June 21, 1960, allowed as a continuation-in-part of application Serial No. 714,-068 filed February 10, 1958, which in turn is alleged to be a continuation-in-part of application Serial No. 624,198, filed November 26, 1956.

Belgian patent 554,612 was granted to Kyowa on February 15, 1957 on an application filed January 30, 1957, and was open to public inspection and in force in Belgium as a patent prior to February 10, 1958; hence if the claims of that Belgian patent and patent '925 are the same, the Belgian patent is a bar unless patent '925 is entitled, under 35 U.S.C. § 120, to the filing date of application Serial No. 624,198, filed November 26, 1956.

Assuming that a "compound having an L-glutamate radical" is the same as "L-glutamic acid", claim 13 of '925 would seem[7] to be equivalent to claim 1 of Belgian patent 554,612; and plaintiffs seem[8] to concede that the disclosures in both applications are the same.

On the question of whether or not '925 is entitled to the November 26, 1956 date of application Serial No. 624,198, defendant argued at some length in its main and reply briefs that it was not, for a reason which, if sound, would invalidate that application,[9] and force plaintiffs to the date of February 10, 1958, the filing date of application Serial No. 714,068. This argument is based upon the contention that under 35 U.S.C. § 120, to obtain the benefit of a prior application, such prior application must disclose the invention "in the manner provided by the first paragraph of section 112", which requires a description of the invention, and of the "process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

---

3. Court of Appeals of Liegè, February 16, 1910.

4. Court of Appeals of Liegè, March 28, 1913.

5. Court for Civil Matters of Liegè, July 23, 1913.

6. The court is not at this time required to consider whether, even if defendant's contention as to Belgian law were correct, the court would be bound by it in considering the effect of a foreign patent on an American one. See General Electric Co. v. Alexander, 2 Cir., 280 F. 852, 854; American Tri-Ergon Corporation v. Paramount Publix Corporation, 2 Cir. 1934, 71 F.2d 153, 156, reversed on other grounds 1935, 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Carter Products v. Colgate-Palmolive Co., D.Md.1955, 130 F. Supp. 557, 566, affirmed 4 Cir. 1956, 230 F.2d 855, cert. den. 1956, 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59, reh. den. 1956, 352 U.S. 913, 77 S.Ct. 152, 1 L.Ed.2d 120.

7. Such equivalence or lack thereof, is a "fact" of which the court is not prepared to take judicial notice.

8. Brief, page 30. Other sections of the brief indicate that this concession may have been for purpose of argument only; an "even if" approach.

9. And '925 itself.

Defendant argues the asserted invention of '925 is the use of an organism identified as Micrococcus glutamicus No. 534 and its various sub-strains for the production of glutamic acid by fermentation. To practice the invention, micrococcus glutamaicus is indispensable; but it is a living organism, which cannot be obtained by synthesis but only by culture. On the filing date of November 25, 1956 of application Serial No. 624,-198, such culture was available only to plaintiff Kyowa. It was not deposited with the American Type Culture Collection until January 28, 1958. Defendant claims that this was ineffective as to any then outstanding application, citing Ex parte Kropp, an unpublished[10] decision of the Board of Appeals of the United States Patent Office.

Plaintiffs counter with affidavits to the effect that in 1956 microorganisms abounded in "soil, feces, air and sewerage" [sic] and they could be screened and selected and used for the manufacture of glutamic acid. Plaintiffs also point out that cultures had been deposited with A T C C before the patent issued; that 35 U.S.C. § 112 does not specify that deposits of microorganisms must be made; that the rules of the Patent Office provide that the "Commissioner may require" an applicant "to furnish specimens or ingredients", which obviously would be after the application was filed; that such has been the practice as to patents relating to microorganisms, including Aureomycin and Terramycin; and that insufficiency of disclosure was only one of three grounds for the Ex parte Kropp decision.

Under these facts the point is not one for decision on a motion for summary judgment, and defendant so concedes,[11] saying:

"* * * We suggest that these factors show invalidity of patent '925 for failure to comply with the 'best mode' provision of section 112, Title 35, USC, but as the question of compliance with this provision is essentially a question of fact and not of law, we have not raised it on this motion for summary judgment." [12]

2. Invalidity because subject matter of each patent was in public use in the United States more than one year prior to the effective filing date of the application on which each patent issued. 35 U.S.C. § 102(b).

Repetitively in part, but hopefully helpfully, the genealogy of the patents is given, together with defendant's contentions and plaintiff's replies.

Patent 3,002,889 issued on October 3, 1961 on application Serial No. 37,078, which in the patent is stated to be a continuation-in-part of application Serial No. 717,841 filed February 27, 1958, allowed on December 30, 1959 and forfeited on June 30, 1960 by failure to pay the final fee. Defendant contends that the differences between Serial No. 37,-078 as filed and Serial No. 717,841 as allowed are "utterly immaterial"; consist of "[M]inor corrections of a typographical nature"; of a "weasel-worded statement as to the classification of the organism involved"; and of "two examples reflecting work done by Merck, and not by the inventors * * *".

Patent 3,003,925 issued on October 10, 1961 on application Serial No. 37,593, filed on February 10, 1958, which in the patent is stated to be a continuation-in-

10. As far as the court is advised, the decision has not been cited in any reported case.

11. However, the point was briefed by plaintiffs, and again covered in defendant's reply brief.

12. It might be noted that the same alleged lack of sufficiency of disclosure would seem equally to apply to the Belgian counterpart, as the application therefor and the issuance thereof was each before a deposit of the culture had been made. Certainly '925 could not have been anticipated by an invalid foreign patent.

part of application Serial No. 714,068, filed February 10, 1958, allowed on December 28, 1959 and forfeited on June 28, 1960 by failure to pay the final fee. Defendant again contends that the differences between Serial No. 37,593 as filed and Serial No. 714,068 as allowed are "utterly immaterial"; consist of "a few corrections of a typographical nature, the insertion of an example dealing with recovery of glutamic acid and a weasel-worded statement as to classification of the organism involved."

Defendant further claims that correspondence between Kyowa's United States Attorney and Kyowa's Japanese counsel shows an "egregious case of dilatory action * * *" These letters display an (understandable) desire to keep the respective applications alive, in view of possible interference proceedings, by the filing of continuations-in-part. These continuations-in-part in substance differed from the pending applications by the additions of examples 15 and 16 in application Serial No. 37,593, and examples 9 and 10 in application Serial No. 37,078, apparently the work of Merck. Example 16 admittedly did not "add much new as to the fermentation step. It describes a suitable recovery procedure in more detail than now appears in the application." Counsel for Kyowa further stated the opinion that "these, together with a discussion of the organism identified, should be adequate to support a CIP." [13]

Anticipatorily, the court finds that at least example 15 appears to be significantly different from the original application. The fact that this example allegedly represents the work of Merck, not the patentee, was raised by the court, but the significance, if any, thereof, has not been briefed by the parties.

Defendant asserts that the alleged failure to insert new matter in the continuations-in-part results in the invalidation of both patents because of the statutory bar of prior public use, it having been stipulated that in December of 1958 and within the United States of America, Merck produced in commercial quantities and offered for sale and sold a compound having an L-glutamate radical, which compound was produced according to the methods described and claimed in '925 and '889.

Defendant asserts that the question presented is purely one of law. Defendant admits that as to the impact of sections 120 and 151 of Title 35, U.S.C. there has been no judicial construction of the statute, effective January 1, 1953; and that prior thereto there had been but two decisions, outside of the Patent Office, dealing with the question of whether an allowed application can, as a matter of right, be displaced by a continuing application [or continuation-in-part] without losing the benefit of the filing date of the original application. Defendant admits that the decisions in Harder v. Hayward, 150 F.2d 256 (3–2), 32 CCPA 1051 and In re Febrey, 135 F.2d 751, 30 CCPA 1099,[14] so hold.

Defendant naturally, although without argument or explanation, submits that this court should adopt the view of the dissent in the Harder case. This the court is not inclined to do. Granted that the choice is one of a legal nature, the court should be aided by further background as to practice and procedure in the Patent Office. To the extent this is presented on the motion for summary judgment, it favors the plaintiffs, rather than the defendant.

Defendant further argues that if this court is unwilling to choose between the majority and minority in Harder, this court should find that the enactment of the 1952 amendments to the patent act made it "perfectly plain that a continuing application filed after allowance of the original application is not entitled to the benefit of the filing date of the

13. Continuation-in-part.

14. At the time of these decisions the Court of Customs and Patent Appeals was a statutory, not a constitutional, court, and its decisions, not being reviewable by the Supreme Court of the United States, were final and binding on the Patent Office.

original application." This is said to follow "directly" from sections 120 and 151 of Title 35.

Section 120 relating to the benefit of an earlier filing date in the United States provides that an application for a patent for an invention properly disclosed in a previously filed application shall have the same effect as though filed on the date of the prior application, if filed before

(1) the patenting, or

(2) abandonment of, or

(3) termination of proceedings on the first application.

Of these only (3) is claimed by defendant to be pertinent. It is asserted that the proceedings on the parent applications which matured into patents '889 and '925 were "terminated" upon their "allowance" in December 1959. If so, they were not entitled to the benefit of the filing dates of the parent applications and hence must depend upon the filing dates in June 1960, more than one year after December 1958 when public use occurred, and are therefore subject to the statutory bar of section 102(b).

Defendant gratuitously assumes and asserts that the majority decision in Harder "frustrated the intent of Congress" and that the 1952 amendments "abolished the filing of continuing applications after allowance * * *." Its reliance upon the legislative history of the 1952 amendments is totally unpersuasive. It refers to the testimony of Mr. P. J. Federico, Examiner-in-Chief of the Patent Office,[15] that section 120 was intended to make some changes in the concepts involved in certain things existing in the law and not written into the statute; and to a statement of the Chairman of the Committee on the Judiciary of the Senate that "In view of the decisions of the Supreme Court and others there have been some changes in the law of patents as it now exists * * * *[16]

That the law was amended to include aspects not theretofore included in the statute is certainly consistent with including the majority decision in Harder. That the amendments may have made some changes in view of "decisions of the Supreme Court and others" is as consistent with conforming the statute with those decisions as in overruling them; and if overruling was intended, no intimation was given as to which were to be overruled.

Plaintiffs also point out that Judge O'Connell, one of the dissenters in Harder, has subsequently recognized the majority opinion in Harder as the law. Application of Williams, 188 F.2d 509, 38 CCPA 1026; Application of Campbell, 212 F.2d 606, 611, 41 CCPA 896, cert. den. 1954, 348 U.S. 858, 75 S.Ct. 82, 99 L.Ed. 676; Tansel v. Higonnet, 215 F.2d 457, 459, 42 CCPA 732.[17]

Moreover, defendant's argument that "termination of proceedings" can only mean that the patent has been allowed— that "termination of proceedings" and "allowance" are equivalent—is illogical.[18] If the proceedings are terminated

---

15. H.R. Hearings, Eighty-Second Congress, First Session, June 13, 14 and 15, 1961, Serial No. 9.

16. Congressional Record, page 9323, Volume 28, No. 120, July 4, 1952. The court would not feel presumptuous in assuming, even if it may not take judicial notice, that amendments to the law are intended to introduce changes therein. Can you "amend" anything without changing it?

17. The decision in Williams was rendered before the effective date of the new Act. The other two decisions are after the effective date, but probably relate to

Patent Office action taken before the effective date. However, as sensitive as Judge O'Connell must have been on, and as to, the validity and effect of Harder, it is almost certain that if he felt a change had been made with respect thereto in the new Act, he would at least have made some mention of it.

18. In fact, defendant argued in court that it knew "of no other way to terminate proceedings than by patenting, abandonment or allowance." Transcript, page 26. Why then did Congress recite patenting and abandonment, allegedly included within "termination", but omit "allowance?"

by allowance, then there would be no need for reference to patenting. Allowance precedes patenting. If allowance were the termination of proceedings, it should be the determinative date for a continuation-in-part, not the later patenting. But it is entirely clear that proceedings are not "terminated" by allowance. After allowance there may be a withdrawal; or amendments in the discretion of the Commissioner; or an interference. To the court it is apparent that "termination" meant final disposition adverse to the applicant, whether in the Patent Office, or by court proceedings after rejection by the Board of Appeals.

Of special significance on this motion is the fact that the Patent Office treated the continuations-in-part as proper, thus holding that they were filed before the termination of proceedings on the parent applications; and, to the extent that that is necessary,[19] that new matter was introduced. Especially on the questions of new matter, the parties should be allowed (or required) to introduce evidence as to the state of the art, so that the court could properly appraise the propriety of the action of the Patent Office.

Defendant further contends that under the provisions of section 151 of Title 35, U.S.C., the final fee shall be paid within six months after written notice to the applicant of allowance of the application, but the Commissioner may allow an additional year. The fees in question were paid more than eighteen months after the allowance of the parent application.

If, as the Patent Office found, and this court is not on the present state of the record prepared to rule that the finding was erroneous, that proper continuances-in-part were filed, then the payment dates would relate to the dates of allowances of such continuances-in-part applications. No claim has been made that under these circumstances payments were not timely made.

The defendant is not entitled to Summary Judgment on the second ground of its motion.

3. False and misleading oath as to '925.

'925 is the result of three applications: Serial No. 624,198, filed November 26, 1956, replaced by continuation-in-part Serial No. 714,068, filed February 10, 1958, in turn replaced by Serial No. 37,593, filed June 21, 1960, on which the patent issued.

The oath supporting application Serial No. 624,198 contained the statement " * * * no application for patent on this invention or discovery has been filed by us or our representatives or assigns in any country foreign to the United States, except as follows: Japan Patent Application No. 12979 of 1956 filed 17th May 1956 * * *."

The oath supporting application Serial No. 714,068 contained the statement " * * * no application for patent on said common subject matter [matter common to Serial Nos. 624,198 and 714,068] has been filed by us or our legal representative or assigns in any country foreign to the United States, except as follows: "Japan, application No. 12979/56, filed May 17, 1956 * * *."

The oath supporting Serial No. 37,593 was verbatim as to subject matter common to Serial Nos. 37,593 and/or 717,068 and/or 624,198.

Defendant points out that Belgian application for the same subject matter, Serial No. 624,198, was filed in Belgium on January 30, 1957, patented on February 15, 1957, and was open to public inspection and in force in Belgium as a patent in mid-1957. It is argued that "had the Patent Office been aware of this fact" it would have denied the patent on the authority of In re Kropp. The argument is repeated that under this decision the disclosure of Serial No. 624,-

19. It is not entirely clear that a continuation need introduce new matter. In re Febrey, 135 F.2d 751, 757, 30 CCPA 1099; Manual of Patent Examining Procedure, section 201.08, 202.02.

198 was defective and that Serial No. 714,068 was barred by the (equally defective) Belgian patent 554,612.

■ This point, previously briefed but abandoned, has been considered. As stated, it would not justify summary judgment of invalidity.

■ However, more broadly is involved the interpretation of Patent Office Rule of Practice 65:

"The oath shall state whether or not any application for patent on the same invention has been filed in any foreign country, either by the applicant or by his legal representatives or assigns. If any such application has been filed, the applicant shall name the country in which the earliest such application was filed * * * ; he shall also identify * * * every such foreign application filed more than twelve months before the filing of the application in this country."

Plaintiffs contend first; that if '925 is entitled to the application date of Serial No. 624,198, the Belgian patent could not be a bar; second, that in a continuation-in-part application, reference as to common subject matter is given only as to the earliest foreign application filed; [20] and that as to the new matter in the continuance-in-part, there were no foreign applications.

The correctness of the first is self-evident. As to Patent Office practice with respect to oaths in continuation-in-part applications, defendant's counsel stated that plaintiffs' attorney "apparently, practices before a different Patent Office than we do * * *" [21] thus apparently raising questions of fact as to Patent Office practice, precluding summary judgment.

Also, the question, previously noted, of whether or not new matter was added in the continuance-in-part requires fur-

ther information as to the state of the art.

In addition, the court raised the question whether, even if the oaths or either thereof, were false, this should lead to a declaration of invalidity, or would constitute only a defense in a suit for infringement. The question has not been answered.

On the record, the third ground for summary judgment has not been established.[22]

The motion for summary judgment is denied, without prejudice.

20. Transcript, page 59.

21. Transcript, page 64.

22. The question is a serious one, but much more detailed information as to Patent Office practice should be presented before any final ruling is made.